LEWIS ANDREWS

*v.*

THE BOARD OF SUPERVISORS OF KNOX COUNTY.

1. JUDICIAL NOTICE—*of matters relating to organization of counties.* This court will take judicial notice of the result of an election on the question of the removal of a county seat, as a fact connected with the organization of counties, where the question is drawn in issue collaterally.

2. CONTEMPT—*must be judicially established.* To deprive a party of a standing in court for any purpose, for contempt in disobeying an order or injunction of the court, if such is the law, there must first be an adjudication finding him guilty of such contempt.

3. SAME—*what constitutes a contempt.* Where the board of supervisors of a county are enjoined from building a county jail at the county seat, the receiving of bids for the work, conditioned upon the dissolution of the injunction, and the awarding of the contract to build the same, to take effect only upon the dissolution of the injunction, is not such a disobedience of the injunction as to place the board of supervisors in contempt.

4. BOARD OF SUPERVISORS—*duty and powers in respect to court house and jail.* It is made the imperative duty of the board of supervisors to build, as often as may be necessary, court houses and jails, and cause the same to be repaired. The time when, the style, capacity and cost of such erections, are wholly committed to them, and in the absence of fraud, corruption or unfair dealing, their discretion can not be controlled by any judicial tribunal. The board are the exclusive judges of the necessity of erecting a new jail, and are amenable only to the people electing them.

5. INJUNCTION—*to restrain supervisors from providing a suitable jail.* In the absence of any charge of fraud, corruption or dishonesty in a board of supervisors, in the exercise of the discretion vested in them in respect to providing a suitable jail for their county, a court has no jurisdiction to order the issue of an injunction to prevent their action, and therefore it will be no contempt to disobey such injunction.

6. CHANCERY—*sworn answer, when oath is waived.* Where an answer under oath to a bill in chancery is waived, if it is sworn to it will not thereby derive any efficacy from the oath, but it may be used as an affidavit in support of a motion to dissolve an injunction.

APPEAL from the Circuit Court of Peoria county; the Hon. HENRY B. HOPKINS, Judge, presiding.

5—70TH ILL.

Mr. S. M. HOWARD, for the appellant.

Messrs. WILLIAMS, McKENZIE & CALKINS, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from an order of the judge of the Peoria circuit court made in vacation, dissolving an injunction. No point is made upon the regularity of the proceedings, but the case is presented and argued upon its merits.

Appellant had filed his bill in chancery in the Knox circuit court for an injunction to restrain the board of supervisors of that county from building a jail at Galesburg, the seat of justice of that county. Appellant represented himself as a tax-payer on a large amount of property in Knox county, and denied the necessity for any expenditure of money for such purpose, alleging that the jail at Knoxville, five miles distant, the former seat of justice, was amply sufficient for all county purposes, and easy of access by a good public road and by railroad. Appellant, in his bill, reviews the proceedings in Knox county, by which the seat of justice was removed from Knoxville to Galesburg, and insists that a majority of the people of the county are opposed to the removal, and that it would so appear by the result of an election soon to take place. This proceeding has the appearance of an appeal from the decision of this court, rendered at January term, 1873, establishing the county seat at Galesburg by a majority of the votes of the people, in conformity with an act of the General Assembly, passed for such purpose, and refusing, before this bill was filed, a petition for a rehearing in the cause presented by the advocates of Knoxville. That question must be considered, for the present at least, at rest, and this court must recognize Galesburg as the seat of justice, or county seat, of Knox county, until some change shall be lawfully made.

Owing to a supposed personal interest of the judge of the Knox circuit court, the application for an injunction was made to the judge of the eighth judicial circuit, without any notice having been given to the county authorities, who, on the *ex parte* statements of appellant, granted a temporary injunction against the board of supervisors, as prayed in the bill, until the court should make an order to the contrary.

In the bill it was alleged the petition for a rehearing in the Supreme Court was then pending when the bill was filed. This is admitted, on the record, to be a misstatement, and we can not but think this allegation of the bill must have had great influence with the learned judge to grant the injunction, and one so sweeping as this is. The election alluded to in the bill, which was to take place in the following November, was an election again to test the strength of parties on the question of removal of the county seat, on which occasion it was decided, by a large majority, that the county seat should be permanently established at the city of Galesburg, of which this court will take judicial notice as a fact connected with the organization of counties.

It appears, when the writ of injunction was served, the defendants therein at once gave notice of a motion to dissolve it, and in due time prepared an answer, which was sworn to by one of the supervisors, before a notary public, on the 18th of March, the writ having been served on the 13th of that month.

At the March term of the Henderson circuit court, a motion was made by the board of supervisors to dissolve the injunction, notice having been duly given to the complainant in the bill. At this term, the complainant, by his solicitor, appeared and presented the petition of complainant for a change of venue, which was granted, and the cause sent to the Peoria circuit court.

In that court, at the May term following, complainant entered his motion to strike the answer of the defendants from the files, for several reasons, the *first* of which was, that

defendants were in contempt of the court issuing the injunction, and had not purged themselves from the contempt, and were in contempt of the Peoria circuit court; *second,* that the board of supervisors had acted in violation of the injunction after service upon them in their corporate capacity, and upon each individual member thereof, and have not purged themselves from the contempt; *third,* that the answer was not signed by the chief officer of the board, nor has the seal of the corporation been affixed; *fourth,* that the answer purports to be a joint and several answer, and there are not several defendants to the bill, but only a single defendant—the board of supervisors; *fifth,* that the answer is improperly signed by W. S. Gale, as a defendant to said bill, when, in fact, he is not a defendant; *sixth,* that defendants are not in a position to ask or claim a hearing of the motion to dissolve the injunction, for the reason that they have violated the injunction, and are in contempt of court; *seventh,* that no motion for a dissolution is before the court; no notice has been given of the application; and last, the answer is scandalous, impertinent, etc.

It appears that appellant, on the 25th of March, had filed, in the Peoria circuit court, an affidavit, stating, in substance, the application for the injunction, the granting the same, its service upon the board of supervisors and each member thereof on the 13th of March, and then charged that the above named supervisors "proceeded to and did violate and disobey the injunction order after the writ of injunction had been served upon them, and had due notice of the same, and he prayed an attachment, and that they be compelled to answer the same, and submitted his motion therefor."

It does not appear that the court took any order on the motion to strike the answer of defendants from the files, or upon the motion for an attachment, but held that complainant had received sufficient notice of the motion to dissolve the injunction, and, on hearing, entered an order dissolving the same.

Against the defendant's objections, an appeal was allowed, which is the case we are now considering.

It may be true, where a party has been adjudged as in contempt in disobeying an order of a court of competent jurisdiction, he can have no standing in the court for any purpose. Here, there has been no adjudication that the defendants were in contempt, by violating the restraining order of the judge.

It appears, after the board was served with the writ of injunction, and on the day of its service, the board passed a resolution to let the contract for building a jail, upon the dissolution of the injunction, and a resolution to appoint a committee to examine bids offered, and to report, for the consideration of the board, the most favorable bid, with contract and bond, all to be conditioned upon the dissolution of the injunction.

A committee was appointed, who reported on certain bids, one of the bidders not willing to await the decision on the injunction, and the other, H. H. Pierce, was. The board also passed a resolution that the committee appointed to prepare plans for the jail, be authorized to close the contract with, and obtain bonds from, Hiram H. Pierce, on the terms of his bid, provided the injunction obtained against the board shall be dissolved within two weeks from this date.

This is all the disobedience of the writ of injunction shown by this record, and we can not think it is of such a character as to place the board of supervisors in contempt of a judicial order, even if the judge had power to grant the order.

Among the duties imposed by law upon the board of supervisors, and in imperative language, is, to build, as often as may be necessary, court houses and jails, or cause the same to be repaired, in their respective counties, at the expense of such counties.

About this they have no discretion—"it *shall* be the duty." The time when, the style, capacity and cost of such erections are wholly committed to them, with no responsibility to any power save the people. The board, acting in good faith in

the discharge of this duty, are amenable to no authority except that from which they derive their own powers. No fraud or unfair dealing is charged against this board in their attempt to discharge an imperative duty, but the whole case rests upon the allegation, that the old jail, at the former county seat, five miles distant, is sufficient to keep prisoners. This is a question exclusively cognizable by the board, and but few persons could be found who would disagree with them, or attempt to thwart their purposes, when the testimony relied on to support this bill shows that, shortly before it was filed, one prisoner, a Swede, escaped; and, for safety, as the deputy sheriff, Patton, testifies, a man charged with murder, and afterwards convicted and executed, was removed by him to the jail of Peoria county.

But all this is immaterial. The board of supervisors were constituted by law the only tribunal to act in this matter, and a failure to act, to perform the duty imposed, would have been a violation of their official oaths. Galesburg had been pronounced by this court the lawful seat of justice of Knox county, and it became the duty of the supervisors to see to it, that a sufficient court house and jail were provided and kept in repair. No other tribunal can lawfully, no fraud, corruption or dishonesty being charged, interfere to arrest their action. It is a question with which a court of chancery has nothing to do, and the act of the judge in issuing the restraining order was without competent authority. This court, in *Sherlock et al.* v. *Winnetka*, 59 Ill. 389, said: "There are some acts which a municipal corporation, while acting within the limits of its charter, may do, without being subject to the supervision of any court. Such acts are those done under its legislative and discretionary powers."

Such is the structure of our governmental system and its organization in this State, that one authority must not trench upon that of another.

In looking at the bill of complaint, it is seen the principal, if not the only, grounds assumed for equitable interposition,

are, the asserted fact that the majority of the people of Knox county were opposed to the removal of the county seat, a fact which the records of this court show to have no existence, and the sufficiency of the old jail at Knoxville. However much the resolve of the board of supervisors may, if carried into effect, annoy any individual tax-payer of the county, he, having no more than a general interest in having it wisely and judiciously carried out, has no absolute right to any specific regulation to that effect, but must be bound by the judgment of the board as to what the public interest requires. These allegations, and all of them contained in the bill, were not, in our judgment, sufficient to confer jurisdiction upon the judge granting the injunction. This being so, there was no contempt in disobeying it, even if the resolutions adopted by the board, after service of the writ, should be held a violation of the injunction, which we are not willing to concede.

It will be perceived, in the several resolutions adopted by the board, respect is shown to the injunction, and nothing done was to be considered as binding, unless the injunction should be dissolved. The county was not committed to any expenditure of money, by anything the board did.

Admitting all the facts to be true, as stated in the bill, and the motion to dissolve the injunction does that, we see nothing to give chancery jurisdiction.

It may be remarked, an answer under oath was waived. The answer put in by Gale, on behalf of defendants, was under oath, and, if an answer in the case, it derives no efficacy from the oath. But it may be used as an affidavit in support of the motion to dissolve.

Looking at the case in all its aspects, appellant has shown no grounds for equitable interposition. Not a solitary allegation in the bill of complaint calls for such interposition. It is not alleged the board had assumed a power they did not possess, or were going beyond their authority in the premises,

or that they were exercising their powers in an arbitrary, oppressive, unjust or corrupt manner.

We see no ground of complaint, and must affirm the decree.

*Decree affirmed.*

Mr. JUSTICE CRAIG took no part in the decision of this cause.