## Commissioners of Highways of the Town of Freeport, v. A. P. Goddard et al.

1. EQUITY PRACTICE—*Affidavits to Support Unsworn Answer.*—Section 17 of our statute relative to injunctions permits the complainant to support his bill and the defendant to support his answer by affidavits filed with the same, which may be read in evidence upon the hearing of the motion to dissolve. Such provision is not confined to cases where the answer is under oath.

**Bill for an Injunction.**—Appeal from the Crcuit Court of Stephenson County; the Hon. JAMES SHAW, Judge presiding. Heard in this court at the April term, 1902. Order dissolving injunction affirmed; decree dismissing bill reversed and cause remanded. Opinion filed July 18, 1902.

PATTISON & MITCHELL, attorneys for appellants.

OSCAR E. HEARD, attorney for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellants, highway commissioners of the town of Freeport, filed a bill against appellees, operators of a street railway, asking for an injunction to restrain appellees from re-laying their street car lines with a T-rail over a new bridge, 210 feet long. A temporary injunction was granted. The bill was answered. Afterward an amended bill and an amended answer were filed, and a motion was made to dissolve the temporary injunction, for want of equity on the face of the bill; for want of equity appearing from the bill, answer and affidavits, and because the writ was improvidently issued. The motion to dissolve the temporary injunction was set down for hearing, and was heard upon the bill and answer, and affidavits filed with the bill and answer respectively. The court below not only dissolved the temporary injunction, but also dismissed the bill. This is an appeal from that decree.

It is argued that as the bill waived an answer under oath and the answer was not under oath, the affidavits filed with the answer should have been stricken from the files, and

they should not have been considered on the hearing of the motion to dissolve. Section 17 of our statute relative to injunctions permits the complainant to. support his bill and the defendant to support his answer by affidavits filed with the same, which may be read in evidence upon the hearing of the motion to dissolve. That provision is not there confined to cases where the answer is under oath. Andrews v. Board of Supervisors, 70 Ill. 65, seems to support the course pursued by the court below in allowing affidavits with an unsworn answer.

The cause had not been set down for final hearing, and the court was not warranted in dismissing the bill unless the bill was without equity on its face, for the bill prayed for a perpetual as well as for a temporary injunction. The bill averred the construction of the street railway with the T-rail over an old bridge at the point in question, when it was within the city limits of the city of Freeport, which is a part of the town of Freeport; that afterward the territory where the said bridge stood was disconnected from said city, and jurisdiction over said bridge devolved upon the highway commissioners; that the bridge was old and required replacing, and the highway commissioners removed the old bridge, built a new bridge, and paved it in a certain manner; that a T-rail is unsafe for vehicles and for the traveling public when laid with that kind of a pavement, and that the highway commissioners so determined, and adopted an order or resolution directing the operators of the street railway in relaying their track upon said new bridge to lay a girder rail, and gave notice thereof to said operators; but that they, disregarding such direction, were about to lay the T-rail across the bridge. The bill set out in detail, reasons why a T-rail would impair the usefulness of the bridge and would inflict injury upon the general public using said bridge, which it was averred was the principal bridge over which traffic in that vicinity passed. It is true, as appellees suggest, that under the horse and dummy act of 1874, and also under the enlarged statute of a like nature, passed in 1897, the authority to lay a street

railway in a public highway outside of a municipality is to be derived from the county board. Nevertheless, we are of opinion that the authority of the highway commissioners over the place in the highway where such track is to be laid is not thereby abrogated. The statute gives highway commissioners charge of the roads and bridges of their respective towns, and requires them to exercise such care and superintendence over the roads and bridges as the public good may require. We are of opinion that if the T-rail is unfit for use upon such a bridge and dangerous to the public using such bridge, and if, as the bill alleges, the way in which T-rails are laid in paved streets, makes it difficult and dangerous to pass over them with carriages and vehicles, and if the use of a T-rail would allow rain and moisture to get into the pavement and destroy it, when some other form of rail would obviate these difficulties, then, according to the case stated by the bill, the highway commissioners were within the proper exercise of their power and authority in requiring that a T-rail should not be laid over this 210 feet of bridge, regardless of the question whether they also had a right to prescribe that a particular form of rail known as the girder rail should be used in its place. The bill, therefore, should not have been dismissed for want of equity on its face.

The answer set up two ordinances of the city of Freeport under which defendants were operating the street railway in question, which ordinances prescribed the use of a T-rail; and it is claimed that they were contracts with the city of Freeport to permit the use of the T-rail upon streets and bridges, which could not be abrogated by the city or by any successor of the city in control of such bridges. The answer also denied that the territory where the bridge was had been disconnected from the city of Freeport, and that said bridge was under the care of the highway commissioners, although it admitted the highway commissioners had taken down the old bridge and built a new one. Defendants admitted receiving the notice given them by the highway commissioners, but denied that the

Commissioners of Highways v. Goddard.

highway commissioners had jurisdiction to act in the matter. They denied that the T-rail was unsuited for the use of the public upon such bridge. The ordinances were set out as exhibits to the answer, and they contain a provision for a T-rail. They also contain the following:

" The city reserves to the city of Freeport the right to control the use, improvement and repair of said streets, and each and every one of them, and each part thereof, to the same extent as if no grant of the right to use the same had been given to said company."

The horse and dummy act, upon which appellees rely, also contains the following:

"Every grant to any such company of a right to use any * * * highway * * * shall be subject to the right of the proper authorities to control the use, improvement and repair of such * * * highway * * * to the same extent as if no such grant had been made, and to make all necessary police regulations concerning the management and operation of such railroad, whether such right is reserved in the grant or not."

We therefore hold that the ordinances adopted by the city of Freeport do not debar the proper public authorities having control of said bridge from exercising all reasonable control over the manner in which the tracks of said street railway shall be laid over the bridge in question. The bill, under oath, averred that this control had passed to the highway commissioners by a disconnection of the territory. While the answer denied such disconnection, it was not under oath, and did not constitute proof, and no affidavit filed by defendants showed that said territory had not been disconnected. Therefore, so far as appears on the face of this record the highway commissioners were in control of this bridge, and had the right to exercise such reasonable control as was vested by the ordinance and by the statute in the proper authorities having control of the highway.

In view of the allegations of the answer we deem it proper to say that while, upon the hearing, complainants must prove the disconnection of this territory from the

city, yet if the proper steps were taken, and a proper ordinance disconnecting the territory was passed; and if the city then relinquished and the highway commissioners then assumed control over said territory, and the highway commissioners then removed the old bridge, and rebuilt this bridge, and the city is not claiming any authority over said bridge—in other words, if a disconnection in fact and exercise of authority by the highway commissioners should be established, then defendants can not litigate in this proceeding the question whether this territory ought to have been disconnected from the city or whether it was so situated as to come within the meaning of the statute authorizing the disconnection of territory from a city. This is a collateral proceeding in which the court can not inquire into the validity of the disconnection, as might be done in an appropriate proceeding brought especially for that purpose.

We think it manifest the courts could not properly determine the vital question in this case, which is whether the T-rail, laid upon a bridge paved as this new bridge is, is dangerous to the life of the bridge and the safety of the public using the same, by the consideration of mere *ex parte* affidavits upon a motion to dissolve a temporary injunction; but that complainants were entitled to have that issue tried by the production of witnesses and their examination and cross-examination. We therefore hold the court should not have dismissed the bill, but should have retained it to a hearing on the merits.

We, however, conclude it was proper to dissolve the temporary injunction and to permit the track to be temporarily laid while the suit was pending. The main part of the city and of the street car line was west of the bridge, but there was a railroad station east of the bridge, and there were factories east of the bridge, and a place of public resort to which defendants had contracted to run their street cars; and there were numerous residences and nearly a mile of street car track east of the bridge. It sufficiently appears that it was a matter of public necessity that

defendants be permitted to run their street cars over this bridge while this litigation is pending. It was therefore proper to permit the rails to be temporarily laid to accommodate the public needs. The dissolution of the temporary injunction did not deprive the court of the power, under the prayer of the bill for a perpetual injunction and for general relief, to require the defendants to remove their T-rail and substitute some other and safer rail, if, on the final hearing, it should appear that the highway commissioners had the authority and that their order forbidding the use of the T-rail was a proper and reasonable exercise of their authority.

The order dissolving the temporary injunction is therefore affirmed, and the decree dismissing the bill is reversed, and the cause is remanded for further proceedings in conformity with this opinion.