E. D. RISSER *et al.* Appellees, *vs.* CHARLES O. PATTON,
Appellant.

*Opinion filed February 20, 1908.*

1. PLEADING—*objection that a bill is multifarious is waived by
answering after demurrer.* By answering the bill after his demur-
rer, based upon the ground that the bill is multifarious, is over-
ruled, the defendant waives his right to insist upon such defense in
a court of review.

2. EQUITY—*when equity may properly retain jurisdiction.* A
court of equity may take jurisdiction of a controversy over the
proper division of the capital stock of a corporation where it is al-
leged that a trust in land is involved, and if the trust is established
and its existence affects the rights of the parties, the court may
retain jurisdiction, enjoin a pending action at law and determine
questions pertaining to the property and the amounts paid by the
parties, in order to do complete justice in the one suit.

APPEAL from the Circuit Court of Kankakee county;
the Hon. FRANK L. HOOPER, Judge, presiding.

May 29, 1905, E. D. Risser, R. A. McCracken and C. O.
Patton entered into an option contract with Emory Cobb to
purchase all of the capital stock of the Kankakee Electric
Railway Company and a tract of land known as Electric
Park, situated in and near the city of Kankakee, for the
sum of $100,000, less a commission of $2000, of which
amount $10,000 was paid in cash on that day, and it was
agreed that the balance of said purchase money should be
paid within ninety days from May 29, 1905, or the $10,000
paid that day on said purchase price should be forfeited.
Eight thousand dollars of said $10,000 was furnished by
E. D. Risser and $2000 of said $10,000 was furnished by
R. A. McCracken, and it was agreed that when the deal was
closed said sums should be refunded to them or applied upon
their proportionate share of the purchase money. It was
also agreed that said properties, when said purchase was
completed, should be owned in equal shares by E. D. Risser,
R. A. McCracken, C. O. Patton and E. E. Rollins, and the

funds with which to purchase said properties were proposed
to be raised by bonding said electric railway company.   It
was found, however, the funds could not thus be raised, and
the purchase price was finally paid by delivering to Cobb
the bonds of the electric railway company for $50,000, and
mortgages upon the electric railway company's property and
the Electric Park property for $15,000, and by paying to him
in cash $33,000, which several amounts aggregate $98,000,
which was the amount of the purchase price, less the $2000
commission.    The $33,000 in cash (which included the
$10,000 option money) was furnished as follows:  By Ris-
ser $15,500, McCracken $8250, Rollins $8250, and Patton
$1000.  The capital stock of the Kankakee Electric Railway
Company was increased from $50,000 to $100,000, and con-
sisted of one thousand shares of $100 each.    Five hundred
shares were issued as follows:  To E. D. Risser, two hun-
dred and thirty-four; to R. A. McCracken, one hundred
and twenty-five; to E. E. Rollins, one hundred and twenty-
five, and to C. O. Patton, sixteen.    Risser, McCracken and
Rollins accepted the shares issued to them, respectively, but
Patton refused to accept the shares issued to him and de-
manded that one-fourth of the entire capital stock of the
Kankakee Electric Railway Company be issued to him.

· During the negotiations for the purchase of said prop-
erties from Cobb, C. O. Patton conveyed to E. E. Rollins
a tract of Texas land, which it is contended by Patton was
conveyed to Rollins in full payment of a one-fourth inter-
est in the properties purchased of Cobb, while it is con-
tended by Risser, McCracken and Rollins that the said
conveyance was made as security to E. D. Risser for ad-
vancing, for the benefit of C. O. Patton, $2500 of the $8000
paid to Emory Cobb by Risser to secure the option for the
purchase of said properties at the time the option contract
was signed.   The Electric Park property was conveyed to
C. O. Patton in trust for the benefit of himself, Risser, Mc-
Cracken and Rollins, said park property being used as a

summer resort in connection with said Kankakee Electric railway. Patton demanded that one-fourth of the capital stock of said railway company be transferred to him, and upon the refusal of Risser, McCracken and Rollins to accede to his demand he refused to permit arrangements to be made for the future use of said park property in connection with said railway property, and thereafter commenced an action at law against E. D. Risser, R. A. McCracken, E. E. Rollins and the Kankakee Electric Railway Company, in the circuit court of Kankakee county, for damages for a failure and refusal to issue to him one-fourth of the capital stock of said railway company. Thereupon E. D. Risser, R. A. McCracken and E. E. Rollins filed this bill against C. O. Patton, and subsequently the Kankakee Electric Railway Company was made a party complainant, to enjoin the said C. O. Patton from prosecuting said action at law, and for the adjustment of all the matters in difference between the parties to said litigation growing out of the purchase of said properties from Emory Cobb, and to establish that said C. O. Patton held said Electric Park property in trust for the benefit of said stockholders of the Kankakee Electric Railway Company. A demurrer was overruled to the bill, and thereupon C. O. Patton filed an answer thereto, and a replication having been filed, a trial was had and a decree entered, wherein it was found that the complainants E. D. Risser and R. A. McCracken, and the defendant C. O. Patton, took an option for the purchase of the capital stock of the Kankakee Electric Railway Company and Electric Park from Emory Cobb on the 29th day of May, 1905; that they paid for said option $10,000; that E. D. Risser paid $8000 and R. A. McCracken $2000 of said option money; that Risser was to have one-half, McCracken one-fourth and Patton one-fourth of said properties; that Patton did not put up any part of said option money but that his share was paid by Risser, Patton agreeing to convey to Risser certain lands located in Jackson county, Texas, as security

for the money advanced for Patton by Risser for putting up Patton's share of said option money; that at the time of the purchase of said properties there was a commission of $2000 allowed by Cobb, which it was agreed between the parties should be divided between Risser, McCracken and Patton; that C. O. Patton afterwards conveyed said Texas land to E. E. Rollins as security for the money advanced for Patton by Risser in securing said option; that the deal with Cobb for the purchase of the capital stock of the said Kankakee Electric Railway Company was consummated by paying Cobb $33,000 in cash, releasing said commission of $2000, and delivering to Cobb $50,000 in bonds of the railway company and mortgages upon the Electric Park and the Kankakee Electric Railway Company property for the sum of $15,000; that of the $33,000 paid in cash, Risser paid $15,500, McCracken $8250, Rollins $8250 and Patton $1000; that Patton has paid nothing further upon the properties purchased from Cobb; that Cobb executed a deed to the Electric Park property conveying the same to Patton, and that Patton holds said Electric Park property in trust for the benefit of the owners of the stock of the Kankakee Electric Railway Company; that Risser, McCracken and Patton, and Risser for Rollins, agreed to purchase and pay for, in equal parts, the stock of said railway company. The court adjudged and decreed that Patton pay over to Risser $7250 within sixty days from the entry of said decree, and upon receipt thereof there be issued to Patton a one-fourth part of the paid-up shares of the capital stock of the Kankakee Electric Railway Company, and upon a failure of Patton to make such payment, that the rights of said Patton in said purchase be represented by sixteen shares of the capital stock of said Kankakee Electric Railway Company, and no more, and that Patton transfer and convey to E. D. Risser, as trustee, the Electric Park property which Patton held in trust for the benefit of the stockholders of the Kankakee Electric Railway Company; that E. E. Rollins con-

vey to Patton the said Texas land; that the prosecution of the action at law commenced by C. O. Patton against E. D. Risser, R. A. McCracken, E. E. Rollins and the Kankakee Electric Railway Company be perpetually enjoined, and that the stock issued to the complainants and the defendants, respectively, be issued subject to the $50,000 in bonds of said Kankakee Electric Railway Company and said mortgages delivered to Emory Cobb as a part of the purchase price of said properties. C. O. Patton has prosecuted an appeal to this court.

P. R. BOYLAN, and SMITH & MARCOTTE, for appellant.

SMALL & BROCK, for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

It is first contended that the bill is multifarious. The defendant filed a demurrer to said bill on the ground it was multifarious, which demurrer was overruled, whereupon he filed an answer to the bill. If the defendant desired to raise the question of multifariousness in this court he should have stood by his demurrer. By answering the bill the defendant waived the defense of multifariousness, if such a defense existed, and that defense cannot now be raised in this court. *Labadie* v. *Hewitt,* 85 Ill. 341; *Bird* v. *Bird,* 218 id. 158; *Gilmore* v. *Sapp,* 100 id. 297; *Ring* v. *Lawless,* 190 id. 520.

It is next contended that the complainants have a complete remedy at law. The question whether the defendant held the title to the Electric Park property in trust for the benefit of all the stockholders of the Kankakee Electric Railway Company was a question clearly cognizable in a court of equity, and a court of equity having assumed jurisdiction of the subject matter of the controversy between the parties with reference to said Electric Park property, and that prop-

erty having been established to be trust property, and the acquisition of that property having been connected with the acquisition of the title to the stock of the Kankakee Electric Railway Company, and the persons for whom the Electric Park property is held in trust being the stockholders of said Kankakee Electric Railway Company, we think the court properly retained jurisdiction of the entire subject matter growing out of the purchase of the stock of said Kankakee Electric Railway Company and said Electric Park property from Emory Cobb, to the end that all questions pertaining to the acquisition, payment for and ownership of said properties might be settled and complete justice be done between the parties in one suit. *Sherlock* v. *Village of Winnetka,* 59 Ill. 389; *Pool* v. *Docker,* 92 id. 501; *School Directors* v. *School Directors,* 135 id. 464; *Longshore* v. *Longshore,* 200 id. 470; *Wehrheim* v. *Smith,* 226 id. 346.

It is finally contended that the proof does not support the decree. The main controverted questions of fact in this case are: First, was C. O. Patton entitled to all of the $2000 commission which Emory Cobb allowed the purchasers at the time of the purchase of the stock of said Kankakee Electric Railway Company and the Electric Park property; and second, was the Texas land conveyed to Rollins as security for the re-payment of Patton's proportion of the option money put up by Risser at the time said option contract was made with Cobb, or was said Texas property conveyed to Rollins in payment in full of a one-fourth interest in the properties purchased of Emory Cobb.

The evidence is conflicting, and a correct decision upon the facts depends largely upon whether credence is to be given to the testimony of Risser and McCracken, who testified that said Texas land was conveyed to Rollins as security for Patton's share of said option money, or to the testimony of Patton, who testified that said Texas land was conveyed to Rollins in full payment of a one-fourth interest in said properties purchased of Cobb.

While the evidence shows Patton was the originator of the scheme to purchase said properties from Cobb, it further appears therefrom that Risser, McCracken and Rollins were the men who furnished the money to purchase said properties, and at the time the option money was paid it was doubtless thought the money to carry through the purchase could be obtained from bonding the railway company, and that the $10,000 put up on May 29, 1905, would soon be returned to Risser and McCracken, and that the $10,000 option money would be all of the funds that the parties would need to use of their own money to carry the deal through. It turned out, however, that the parties could not sell the bonds of said Kankakee Electric Railway Company which they proposed to issue on said property. It was therefore found necessary to make arrangements, other than by bonding the railway company, to get funds with which to pay Cobb and save the option money which had been put up on the 29th day of May, 1905. This was done by paying $33,000 in cash and by turning over to Cobb $65,000 in bonds and mortgages secured upon the property purchased from him. Of the cash payment Patton only paid $1000, which he testified was a loan to Risser.

We think, when the entire evidence found in this record is considered, it is unreasonable to suppose that Risser would agree to accept a deed to three hundred and seventy-four acres of wild land in Texas, which he had never seen, and which did not exceed in value $10 per acre, subject to mortgages aggregating $1500, in full payment for property which he was then purchasing of Cobb for $8250 in cash; and as to the $2000 commission, in the written contract made between Risser and McCracken and Patton, bearing date May 29, 1905, it is stated, "Charles O. Patton has claimed commission of Emory Cobb (for the benefit of all the parties to this contract) amounting to $2000," and both Risser and McCracken testified that the commission was to be deducted from the purchase price of the properties

purchased from Cobb, and that all the parties to the contract of purchase were to receive the benefit of said commission in proportion to the amount of stock which they held in the Kankakee Electric Railway Company, and Charles H. Risser testified Patton informed him that all the purchasers of said properties were to receive the benefit of said commission.

From a careful examination of this record we are of the opinion that the findings of the chancellor, as incorporated in the decree, are supported by the great weight of the testimony and that they should be sustained.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*