# CASES DETERMINED

AT THE

## January Term, 1898.

THE STATE EX REL. FOWLER VS. THE CIRCUIT COURT FOR GREEN LAKE COUNTY.

*October 5, 1897 — January 11, 1898.*

*Injunctions: Foreign corporations: Restraining collection of debt: Jurisdiction: Contempt of court: Punishment.*

1. A foreign corporation, doing business and owning property in this state, became insolvent and its business was suspended by proceedings against it in another state, instituted by its creditors, in which a receiver had been appointed. Another foreign corporation, a mere creditor at large of the former, without attempting to obtain a lien of any kind upon its property, commenced in this state an action against it and procured the appointment of an ancillary receiver and an injunction restraining all the other creditors from prosecuting actions at law to enforce collection of like demands. *Held,* that the granting of such injunction was contrary to equity practice and well-established principles of interstate comity; and that it was not authorized by sec. 3227, R. S. (providing that at any stage in proceedings against insolvent corporations "the court may restrain all proceedings by any other creditor against the defendant in such action"),— secs. 3216–3228 being applicable only to proceedings against insolvent domestic corporations.

2. The granting of the injunction in such a case, although ill-advised and erroneous, was not absolutely void, since the court had jurisdiction of the subject matter — the administration of the assets of an insolvent corporation — and of the parties.

The State ex rel. Fowler vs. The Circuit Court for Green Lake County.

3. The fact that an injunction issued by a court having jurisdiction was erroneous affords no justification or excuse for its violation; but such fact may properly be taken into consideration in awarding punishment for its breach.

4. A foreign corporation cannot be allowed, on the ground of interstate comity, to maintain in the courts of this state actions or proceedings denied to residents of the state or other suitors in its courts.

CERTIORARI to review proceedings of the circuit court for Green Lake county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This was a *certiorari* issued to review the proceedings of the circuit court for Green Lake county against *Chester A. Fowler* for an alleged criminal contempt, for which, upon conviction, he was adjudged to pay a fine of $200 and costs, taxed at $17.70, and in default of payment to be imprisoned in the county jail until such fine and costs were paid, not exceeding thirty days.

The proceedings were instituted by an order requiring said *Fowler* and one D. W. McNamara to show cause on, etc., why they, and each of them, should not be adjudged guilty of wilful disregard and disobedience of an injunctional order entered in the circuit court for Green Lake county March 31, 1897, in the case of the Hibernian Banking Company, a foreign corporation, plaintiff, against the Berlin & Montello Granite Company, defendant, also a foreign corporation, enjoining and restraining "all creditors of the defendant, and all other persons who had not then brought suits against it, from bringing any action at law or in equity against the defendant, or from in any manner interfering with its property," and why the said *Fowler* and McNamara should not be punished accordingly. The injunctional order referred to was contained in an order appointing a receiver in the action in Green Lake county for the Wisconsin property of the Berlin & Montello Granite Company, as auxiliary or ancillary to a receivership ordered on

The State ex rel. Fowler vs. The Circuit Court for Green Lake County.

the same day by the circuit court of Cook county, Illinois. The contempt charged was the bringing of an action by the relator, *Fowler*, as attorney for A. G. Becker & Co., also a foreign corporation, in the circuit court for Milwaukee county, against the defendant in the present action, and recovering judgment therein against the defendant corporation in favor of said A. G. Becker & Co. for about $25,000, after the issuing, and with knowledge of the existence, of the said injunctional order.

The relator, *Fowler*, objected to the jurisdiction of the circuit court for Green Lake county, that the act charged did not constitute on his part any neglect or violation of duty or misconduct by which the rights or remedies of a party to any action depending or triable in said court had been or might be impaired, impeded, defeated, or prejudiced, and that the alleged contempt was charged as a criminal contempt, and the proceedings against him were not brought in the name of the state of Wisconsin, and, further, that he was not charged with disobedience of any process or *lawful* order of the court. He contended that the injunctional order was issued without authority, and was void.

The complaint in the action wherein the injunctional order had been entered stated, in substance, that the Berlin & Montello Granite Company, an Illinois corporation, was indebted to the plaintiff.in the action, the Hibernian Banking Company, in various sums, upon causes of action therein set out, and, among other things, upon a judgment obtained by the plaintiff against the defendant on the 9th of March, 1897, in the circuit court of Du Page county, Illinois, for $3,200 damages and costs, and it alleged that an execution had been issued on said judgment, and returned wholly unsatisfied; that the defendant in the action was the owner of a granite quarry located at Berlin, Wisconsin, and valuable quarries at Montello, in said state, and had operated a quarry at Waterloo, under a lease thereof; that its property con-

The State ex rel. Fowler vs. The Circuit Court for Green Lake County.

sisted almost wholly of quarry properties and lands used in connection therewith, and the buildings, machinery, and necessary equipment for operating the said quarries, together with a lease of the property at Waterloo, and that prior to the 1st of March, 1897, the defendant was the owner and in possession of a large amount of personal property, of great value, located at its quarry in Berlin, consisting of tools and equipments, and finished and unfinished product of the quarry then upon the grounds, and owned other similar property at Montello; that prior to March 1, 1897, judgments had been given and attachments issued and obtained in divers actions against the defendant, and said personal property had all been sold at execution sale, except finished and partially finished monuments, and building stone, paving blocks, and crushed granite, which had a market value of many thousand dollars if the same could be sold to the best advantage; that said property had been attached and levied upon by divers writs for about $7,000; that it was worth more than $20,000; that the real estate of the defendant had been seized and levied on, under like writs of attachment, for large sums of money, and the defendant was indebted to various persons, aggregating in all $170,000; that it was insolvent, and its assets wholly insufficient to meet its obligations and liabilities; that its property of every kind and description in the state of Wisconsin would not exceed the value of $140,000; that in the circuit court for Cook county, Illinois, on the application of the plaintiff, the Hibernian Banking Company, C. B. Beech had been appointed receiver of the assets and property of the defendant, of every name, kind, or description, and that he had qualified and was acting as such receiver; that said property would be sacrificed at the sheriff's sale unless a receiver should be appointed, with authority to borrow money to pay said execution and judgment liens; and that the said property, and the rents, issues, and profits thereof, were in

danger of being lost or materially impaired, to that extent that the plaintiff could not, without the relief prayed for, make the amount of its claim.

It demanded judgment: (1) For the amount due and owing to it from the defendant, with costs and disbursements. (2) That all the property of the defendant in the state of Wisconsin be impounded and sequestrated; that the same person appointed receiver by the circuit court of Cook county, Illinois, be appointed receiver for the circuit court for Green Lake county, clothed with the usual authority, etc., and vested with all its title and all its property, real and personal, in the state of Wisconsin; and that he be authorized to borrow money and pledge the property of the defendant in Wisconsin for the payment of such liens, to pay the outstanding claims and judgments against said property. (3) That said receivership be auxiliary to the receivership existing by virtue of the proceedings in the state of Illinois, as an aid thereto. (4) That an injunction be granted, restraining all creditors of said defendant in Wisconsin from bringing any other action or suit at law against the defendant, and that all its creditors have leave to join in said action, sharing expenses, and that they be required, within such time as the court might order, to file their several claims with the receiver, and prove the same,— and for such further and other relief as should be just and equitable.

March 31, 1897, C. B. Beech was appointed receiver of all the debts, property, real and personal, equitable interests, rights, and things in action, of the defendant in the state of Wisconsin, and, upon filing his bond, was to be invested with the usual rights and powers of a receiver, according to law; and he was ordered to proceed to aid and assist in the winding up of said Berlin & Montello Granite Company then proceeding in the circuit court of Cook county, Illinois, to which this proceeding was said to be ancillary.

It was not alleged in the action that the plaintiff had re-

covered any judgment in any court of Wisconsin against the Berlin & Montello Granite Company, or that it had obtained any attachment or other lien upon any of its property in that state, and there was no allegation to show that the said Hibernian Banking Company occupied any other position than that of a creditor at large of the defendant.

*C. A. Fowler*, relator, *pro se*.

*John J. Wood, Jr.*, for the respondent, contended, *inter alia*, that the fact that the defendant was a foreign corporation and that the courts of its domicile had appointed a receiver for it is a sufficient basis for the Wisconsin bill. The courts of one state, by the exercise of interstate comity, will aid and assist a foreign receiver, where the same may be done without prejudicing the interests of its own citizens, by the appointment of an ancillary receiver. 8 Am. & Eng. Ency. of Law, 408; Smith, Receiverships, 29, 30; *National Trust Co. v. Miller*, 33 N. J. Eq. 155; *Sobernheimer v. Wheeler*, 45 id. 614; *Day v. Postal Tel. Co.* 66 Md. 354; *Buswell v. Supreme Sitting Order of the Iron Hall*, 161 Mass. 224; *Platt v. P. & R. R. Co.* 54 Fed. Rep. 569; *Clyde v. R. & D. R. Co.* 56 id. 539; *Ames v. U. P. R. Co.* 60 id. 966; *Hunt v. Columbian Ins. Co.* 55 Me. 290. It should be noted (1) that the courts look to the *common law* and not to any *statute* for their authority to appoint such ancillary receiver; (2) that the receiver is clothed with the same power that a receiver of a domestic corporation would have under the statutes of the forum; (3) that the sole restriction is that the home claimants must be first protected; (4) that after the home creditors are protected the assets are to be distributed ratably. The only question before this court is whether or not the circuit court for Green Lake county had jurisdiction to punish the relator for contempt. *State ex rel. Turner v. Circuit Court for Ozaukee Co.* 71 Wis. 595. By jurisdiction is meant the power to hear and determine causes and render judgment. *Rhode Island v. Massachusetts*, 12 Pet. 718; Var.-

The State ex rel. Fowler vs. The Circuit Court for Green Lake County.

fleet, Collateral Attack, 71, 73, 74; *People ex rel. Duvis v. Sturtevant*, 9 N. Y. 263, 269; *Erwin v. Lowry*, 7 How. 172. The circuit court for Green Lake county had jurisdiction of the subject matter of the suit and of the person of the relator, and jurisdiction to impose a fine for contempt and to render judgment accordingly.   Secs. 3490, 3491, R. S.

PINNEY, J.   1. The proceeding against the relator seems to have been regularly instituted by an order to show cause in the case in which the injunction had been granted, and was prosecuted as a proceeding in that action.   R. S. secs. 3480, 3481.   It appears to have been regularly instituted and conducted.   The punishment inflicted was such as the court might lawfully inflict in a proceeding for the violation of the injunctional order.   The relator insists that the circuit court for Green Lake county had no jurisdiction to grant the injunctional order with the violation of which he was charged.   The circuit court for Green Lake county was a court of general jurisdiction in actions at law and suits in equity, and had authority, in actions instituted therein, to grant injunctions in all proper cases (R. S. sec. 2774), and to punish parties for contempt for a violation thereof.   It had jurisdiction of the principal action, with authority to hear and decide every motion or application made or pending therein.

2. The granting of injunctions is one of the highest and most important prerogatives of a court of equity.   With whatever irregularities the proceeding may be affected, or however erroneously the court may have acted in granting an injunction in the first instance, it must be implicitly obeyed, as long as it remains in existence; and the fact that it has been erroneously granted affords no justification or excuse for its violation.   The party against whom it issues, or who is affected by notice of its existence, will not be allowed to violate it on the ground of a want of equity in the

bill, since he is not at liberty to speculate upon the intention or decision of the court, or upon the equity of the bill, or to question the authority of the court to grant relief upon the facts stated, except upon application to dissolve or vacate the injunction. Upon proceedings for contempt for violation of an injunction, the only legitimate inquiry is whether the court granting the injunction had jurisdiction of the parties and of the subject matter; and the court will not, in such proceedings, consider whether the order was erroneous. If the court had jurisdiction of the subject matter, the fact that its power was erroneously exercised does not render the injunction void, but only voidable upon proper application; and, until set aside or revoked, it is entitled to implicit obedience. 2 High, Injunctions, §§ 1416, 1417. The sole remedy of the party is by motion to vacate the injunction. *Wis. Cent. R. Co. v. Smith*, 52 Wis. 143. It must be obeyed while in existence. *Sullivan v. Judah*, 4 Paige, 444; *People ex rel. Davis v. Sturtevant*, 9 N. Y. 263; *Erie R. Co. v. Ramsey*, 45 N. Y. 647. While the fact that an injunction was erroneously issued in the first instance affords no justification or excuse for its violation, still such fact may properly be taken into consideration in awarding punishment for its breach. *Sullivan v. Judah, supra; Cape May & S. L. R. Co. v. Johnson*, 35 N. J. Eq. 422; 2 High, Injunctions, § 1418; *Partington v. Booth*, 3 Mer. 148; *Kaehler v. Dobberpuhl*, 56 Wis. 497; *Kaehler v. Halpin*, 59 Wis. 40.

3. If the court had no jurisdiction over the matter involved, or if it exceeded its power by granting the injunction in a matter *beyond* its jurisdiction, its injunction will be treated as absolutely void, and no punishment will be inflicted for contempt for its alleged violation; as, when an injunction is issued against a board of township officers to restrain them from holding an election which they are authorized by law to hold, or where the court has exceeded its power by granting an injunction in a matter over which

it has no jurisdiction, as by enjoining a board of municipal officers from canvassing the returns of an election, a court of equity having no power to hear or determine such controversies, its injunction will be treated as absolutely void, and punishment inflicted for its violation will not be upheld. 2 High, Inj. § 1425; *Walton v. Develing*, 61 Ill. 201; *Darst v. People*, 62 Ill. 306; *Andrews v. Knox Co.* 70 Ill. 65; *Dickey v. Reed*, 78 Ill. 261; *Ex parte Wimberly*, 57 Miss. 437. Where the court has jurisdiction of the person and the subject matter, and has the legal capacity to hear and decide in respect thereto, a violation of its order will render the party liable to punishment, from which no other tribunal can relieve him. The order in such case, although erroneous, is not void, but valid until reversed or set aside.

4. It is clearly settled that it is no part of the general function of a court of equity to enforce the payment of debts. A mere creditor at large (as the plaintiff in the action in the circuit court for Green Lake county was) has no standing in a court of equity for that purpose. It is only after the creditor has taken and exhausted all the means within his power at law that he has any standing to ask the aid of equity to discover and apply the debtor's property to satisfy his claims. It is necessary to the jurisdiction of a court of equity in such an action that it should be made to appear that the creditor is unable to obtain satisfaction of his debt by seizing property under an execution. The court must be satisfied that there has been an effort in good faith made by the creditor to collect his judgment, and that he has exhausted without avail his remedy at law. The court did not take any jurisdiction under the statute (R. S. secs. 3216–3228) providing for " proceedings against insolvent corporations," although the injunction seems to have been granted under sec. 3227 of that statute, by which, in a proceeding thereunder, at " any stage of the proceedings, the court may restrain all proceedings by any other creditor

against the defendant in such action;" and the order for subsequent proceedings in the action seems to have been granted as well under that section, on the ground that the action was brought under the statute for proceedings against insolvent corporations, which is applicable only to cases of proceedings against insolvent corporations "incorporated under the laws of this state." The action was certainly not a common-law creditor's action. *Northwestern Iron Co. v. Central Trust Co.* 90 Wis. 576; *Weber v. Weber*, 90 Wis. 474–476; *Hollins v. Brierfield Coal & Iron Co.* 150 U. S. 371, 378.

Although the plaintiff had a complete and adequate remedy at law, as appears from its complaint, it does not follow that the court was without jurisdiction to grant the injunction. The ground on which courts of equity refuse to take cognizance of proceedings in such cases, namely, that the plaintiff has an adequate remedy at law, "is in no proper sense jurisdictional." The court has power to hear and determine the action, and in general will do so unless objection in proper form be taken. This may be by demurrer to the complaint when the objection appears on the face of it; otherwise by answer. If not taken in one or the other of these forms, it is waived. *Peck v. School District*, 21 Wis. 521; *Tenney v. State Bank*, 20 Wis. 152; *Grandin v. Le Roy*, 2 Paige, 509. In *Peck v. School District, supra,* it was said that the objection that the plaintiff has an adequate remedy at law "is no more than a rule of practice in the court of chancery, upon which the action will be dismissed if the attention of the court is called to it at the proper time and in the proper manner; and, although it is most frequently spoken of by courts and writers as a question of jurisdiction, it is strictly inaccurate to call it so. There is no want of jurisdiction, and should the court proceed, after objection taken, according to its own rule, it is very clear that the judgment would not be void." This view of the question of jurisdiction of the subject matter in equity is expressly affirmed in the case of

*Hollins v. Brierfield Coal & Iron Co.* 150 U. S. 371. It is there said: "Defenses existing in equity suits may be waived, just as they may in law actions; and when waived, the cases stand as though the objection never existed. Given a suit in. which there is jurisdiction of the parties [as in the present case], in a matter within the general scope of the jurisdiction of courts of equity, and a decree rendered will be binding, although it may be apparent that defenses existed, which, if presented, would have resulted in a decree of dismissal. . . . It cannot be doubted that a final decree, providing for a settlement of the affairs of a corporation and a distribution among creditors, could not have been challenged on the ground of a want of jurisdiction in the court; and that notwithstanding that it appeared upon the face of the bill that the plaintiffs were simple-contract creditors; *because the administration of the assets of an insolvent corporation is within the functions of a court of equity,* and, the parties being before the court, it has power to proceed with such administration. If there was a defense existing to the bills as framed, an objection to the right of these plaintiffs to proceed on the ground that their legal remedies had not been exhausted, it was a defense and objection which must be made *in limine,* and does not of itself oust the court of jurisdiction." *Sage v. M. & L. R. Co.* 125 U. S. 361; *Mellen v. Moline Malleable Iron Works,* 131 U. S. 352.

The contention that the jurisdiction of the circuit court for Green Lake county might be rested simply upon the ground that the property and assets of the defendant corporation were a trust fund held for the benefit of the plaintiff and others, its creditors, is reviewed and rejected in *Hollins v. Brierfield Coal & Iron Co.* 150 U. S. 380, 384.

The position that the circuit court for Green Lake county had jurisdiction of the subject matter of the action may well be rested upon the ground that notwithstanding, upon the facts of the complaint, the plaintiffs were simple-contract

The State ex rel. Fowler vs. The Circuit Court for Green Lake County.

creditors, yet because the administration of the assets of an insolvent corporation is within the functions of a court of equity, and the proper parties being before the court, it had power to proceed therewith. It does not appear that any objection was made to the right of the plaintiff to proceed in that action on the ground that its legal remedies had not been exhausted. The complaint in the action shows that the defendant has a large amount of property within the jurisdiction of the court which had already been seized and was about to be sold for the payment of its debts; that its indebtedness was over $170,000, and the value of its property and estate was $140,000, which had been levied on and attached for claims to the amount of $27,000. The fact of the embarrassed condition of the defendant company, and that a struggle was going on among its creditors for payment out of its assets, would seem to constitute no reason why the court should appoint a receiver for it or restrain any of its creditors from proceeding to collect their demands by actions at law. One object of the action seems to be to authorize the receiver to borrow money upon the property and assets of the corporation to release its property, or save it from sacrifice by sale for the payment of debts. We are not prepared to affirm that a court of equity may rightfully, in a case like the present, resort to such a measure in the administration of the affairs of an insolvent corporation; but upon this subject, as well as upon the question whether the complaint states facts sufficient to constitute a cause of action, it is not necessary to express an opinion. It is sufficient that the court had jurisdiction, as already defined, of the subject matter of the action. The plaintiff being a foreign corporation, its right to recognition in this state, and to sue in its courts, depended upon interstate comity; and whether, as a mere creditor at large of the corporation, it can come into the courts of this state, and maintain upon that ground, merely, an action for the appointment of an

ancillary receiver in a case like the present, it is not necessary now to consider.

Reference was made at the argument to the case of *National Trust Co. v. Miller*, 33 N. J. Eq. 155, and other decisions in that state on this subject; but it will be found on examination that such decisions rest upon a statute of that state, by the express provisions of which foreign corporations doing business therein were made subject to all the provisions of the New Jersey statute concerning domestic corporations, so far as the same could be applied to foreign corporations, and upon the ground that the legislative design was unquestionably to confer upon the court the same powers in respect to insolvent corporations, created by foreign jurisdictions, having property in New Jersey, that it might exercise over insolvent domestic corporations,— so far, at least, as the exercise of such powers was necessary to the recovery of any assets, whether legal or equitable, and the right to appoint an ancillary or auxiliary receiver to a proceeding instituted against such foreign corporation in the state which created it.

The corporation defendant was insolvent, and its business appears to have been broken up, or suspended by the proceedings instituted against it by its creditors. The situation was that the plaintiff, itself a mere creditor at large of the defendant, without any levy or lien of any kind upon the defendant's property, commenced an action against it, in which it sought to reduce its claim to judgment, with a view, doubtless, to ulterior equitable relief. It got an ancillary receiver appointed and an injunction to prevent all other creditors from prosecuting their debtor at law for the recovery of their like demands against it. The effect of these proceedings was to hold at bay all other creditors, and prevent them from proceeding at law against the defendant to collect their debts, or to exhaust their legal remedies in order that they might institute appropriate proceedings in equity for that

The State ex rel. Fowler vs. The Circuit Court for Green Lake County.

purpose. Under this receivership and injunction,— granted, as it is said, upon the ground of *interstate comity*,— Becker & Co., a creditor of the defendant corporation to the amount of $25,000, was to be kept out of the courts of the state, and prevented from resorting to the courts of Wisconsin to recover at law its demand, or to attach the property of the defendant, its debtor; and its attorney, *Mr. Fowler*, has been prosecuted and fined $200 and costs for instituting and prosecuting to judgment an action at law for the recovery of a legal demand in favor of his client against the insolvent corporation defendant. The effect of this injunction and receivership was to close the doors of the courts of this state most effectually against all of the defendant's creditors, except the plaintiff, while it was proceeding in its action for the recovery of its legal demand against it. In our judgment, the granting of such receivership and injunction is not sustained by, but is contrary to, equity practice and well-settled principles of interstate comity. It appears to have operated harshly and oppressively. It seems to have been granted under a misapprehension as to the applicability of the statute in respect to proceedings against insolvent corporations, incorporated under the laws of this state, to the particular case in hand.

We cannot hold that the injunction was absolutely void because it was erroneous and ill advised. The attorney for Becker & Co. was technically guilty of contempt, in proceeding, in disregard of it, to prosecute its action against the defendant to judgment. The plaintiff, as a foreign corporation, might properly, upon grounds of interstate comity, come into the courts of this state and prosecute its causes and rights of action therein in the same manner and as freely as a citizen of Wisconsin or other suitors under similar circumstances; but we hold that it cannot on that ground be allowed to maintain in such courts actions or proceedings denied to residents of the state or other suitors in its courts.

No sound reason is perceived why, in this respect, it should be accorded rights or advantages superior to those of residents or such other suitors in the courts of the state.

The proceeding against the relator for contempt, in accordance with the authorities already cited, should have been discharged upon payment by him of the costs thereof. For the reasons stated the order of the circuit court must be reversed, and the cause remanded to that court for further proceedings in conformity with this opinion.

*By the Court.*—Judgment is ordered accordingly.