John F. Jelke Company, Respondent, vs. Beck, imp., Appellant.

*April 6—October 11, 1932.*

652

654

For the appellant there were briefs by the *Attorney General, Fred M. Wylie,* deputy attorney general, and *Samuel Becker* of Milwaukee, special counsel, attorneys for the Department of Agriculture and Markets, and *Glenn D. Roberts* of Madison and *Grady, Farnsworth & Walker* of Madison and Portage, attorneys for J. D. Beck, and oral argument by *Mr. Wylie* and *Mr. Grady.*

For the respondent there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Ralph W. Jackman.*

The following opinion was filed May 10, 1932:

ROSENBERRY, C. J. On the part of the appellant it is urged that the judgment is erroneous (1) on the ground that the trial court had no power to enter the original restraining order for the reasons (a) the circulation of the list was specifically authorized by statute; (b) any citizen has the right to circulate a public record; (c) the circulation of the lists did not constitute unfair competition; (d) to restrain the compilation of such lists would violate constitutional guarantees of freedom of speech and of the press; (e) where injunctional order violates constitutional guaranty it is void *ab initio* and there can be no contempt judgment; (f) constitutional provisions prevent issuance of an injunction in any event. (2) That the lists issued did not violate the court's order. (3) That the defendant was entitled to a change of venue and a trial by jury pursuant to the provisions of ch. 376 of the Laws of 1931.

For the reason that the judgment must be erroneous if the defendant was entitled to a change of venue and trial

by jury under the Laws of 1931, we shall first determine that question. Ch. 376 is entitled "An act to create sections 268.18 to 268.30 of the Statutes, relating to litigation growing out of labor disputes and limiting the jurisdiction of courts sitting in equity." Sec. 268.27, Stats., provides:

"In all cases where a person shall be charged with civil or criminal contempt for violation of a restraining order or injunction issued by a court or judge or judges thereof, the accused shall enjoy: (1) . . . (2) . . . . (3) . . . (Right of jury trial.) (4) The right to file with the court a demand for the retirement of the judge sitting in the proceeding, upon an affidavit of prejudice being filed as is now provided by law in other cases."

Sec. 268.30 of the Statutes provides:

"If any provision of sections 268.18 to 268.30 or the application thereof to any person or circumstance is held invalid, the remainder of these sections and application of such provisions to other persons or circumstances shall not be affected thereby."

The insertion of this provision in the act of the legislature indicates that it regarded with serious doubt the validity of some of the sections when applied to particular persons and circumstances. With the exception of sec. 268.27, relating to contempt cases, the language of the sections specifically limits its application to cases involving or growing out of a labor dispute. If it was the legislative purpose to provide that in every case where restraining orders were issued, as for instance in divorce actions, in actions to foreclose mortgages, and in innumerable other actions where restraining orders are issued for the purpose of preserving the *status quo* during the progress of the litigation, that the making of such an order should be erected into a separate cause of action entitling the person against whom the order was issued to a jury trial and to file an affidavit of prejudice, the legislature should certainly have made that purpose un-

mistakable. Such a statute would introduce changes into the administration of the law of fundamental and far-reaching effect. The statute, as its title indicates, dealt with controversies growing out of labor disputes as defined in the act. If construed as contended for by the defendant, grave constitutional questions would undoubtedly be raised. The statute quite apparently proceeds upon the theory that the power of the legislature to regulate courts in the state of Wisconsin is the same as the power of Congress to regulate inferior courts of the United States. It has been held under the constitution of the United States, which confers upon Congress the power to create inferior courts, that Congress may grant or withhold such jurisdiction as it pleases. In Wisconsin the jurisdiction and power of the courts is conferred not by act of the legislature but by the constitution itself. While the legislature may regulate in the public interest the exercise of the judicial power, it cannot, under the guise of regulation, withdraw that power or so limit and circumscribe it as to defeat the constitutional purpose. Whether or not the regulation of the exercise of power of courts of equity in labor disputes involves a limitation which is destructive of effective exercise of the power conferred by the constitution is a question involving grave considerations and should not be determined except in a case where the question is necessarily presented and the court has the benefit of full arguments upon both sides of the question. It is considered that ch. 376 was not intended to have and does not have any application to the exercise of the powers of a court of equity in cases other than those growing out of a labor dispute as that term is defined in the act. The court was therefore not in error in denying the motion for a jury trial or in refusing to withdraw from the case upon the filing of an affidavit of prejudice.

In addition to what has already been said, it may be said further that no issue of fact is presented by the record in

this case. The defendant in effect admits the facts alleged in the petition but denies the power of the court to issue the injunction, and alleges that he was justified in the performance of his duties in performing the acts complained of.

We come now to a consideration of the principal question raised in the case—the right of the court to adjudge the defendant in contempt. Preliminary to that matter, we shall advert briefly to some fundamental and well established principles of law relating to the power of a court of equity over the conduct of persons who are before it as parties to actions. The fact that the term "jurisdiction" is used to express different legal concepts has led to a great deal of confused thinking. It is used in two distinct senses : (1st) a court may be without jurisdiction in a sense that it has no power to act; (2d) where the court having power to act by reason of error makes a determination which it ought not to make. This whole matter has been considered at length a number of times. *Harrigan v. Gilchrist,* 121 Wis. 127, 223, 232, 99 N. W. 909. See, also, *State ex rel. Fowler v. Circuit Court,* 98 Wis. 143, 73 N. W. 788; *First Trust Co. v. Holden,* 168 Wis. 1, 168 N. W. 402; *Seyfert v. Seyfert,* 201 Wis. 223, 229 N. W. 636; *Vick v. Strehmel,* 197 Wis. 366, 222 N. W. 307; *Kaehler v. Dobberpuhl,* 56 Wis. 497, 14 N. W. 631.

There can be no doubt that the circuit court has jurisdiction in the sense that it has power to enjoin state officials from enforcing a statute which is invalid because in contravention of the constitution. An unconstitutional act of the legislature is not a law. It confers no rights, imposes no penalty, affords no protection, is not operative, and in legal contemplation has no existence. *State ex rel. Kleist v. Donald,* 164 Wis. 545, 160 N. W. 1067; *State ex rel. Ballard v. Goodland,* 159 Wis. 393, 150 N. W. 488.

In entertaining the suit brought by the plaintiff, therefore, based upon the allegation that ch. 96 was an invalid

law because in contravention of the constitution, the court was acting well within its jurisdiction in the sense that it had full power to act. As an incident to the exercise of that jurisdiction or power the court had authority to preserve the rights of parties pending final determination of the litigation. This is the power to preserve the *status quo.* The defendant Beck did not await the final determination of the issues raised, but took the law into his own hands and proceeded to determine for himself that the court had no authority to issue the injunction and that the things which he proposed to do did not constitute a violation of the order. If the court had jurisdiction in the sense that it had power, which it undoubtedly did, then it was the duty of the defendant Beck, both as a citizen and officer of the state, to await an orderly determination of the issues raised; for even if the order was erroneous, unless it constituted a clear abuse of judicial power in the jurisdictional sense it was his duty to obey. *State ex rel. Fowler v. Circuit Court,* 98 Wis. 143, 73 N. W. 788; *Kaehler v. Halpin,* 59 Wis. 40, 17 N. W. 868; *Cline v. Whitaker,* 144 Wis. 439, 129 N. W. 400.

Courts are an institution set up by society for the orderly determination of disputes. Much confused thinking results from a failure to distinguish between the court as an institution and the presiding judge through whom the court functions. An affront to the court is not merely an affront to the personality of the presiding judge, but is an affront to the people of the state who by their constitution instituted and created the court. When the court speaks, the people speak through their duly chosen representative. The contempt punished in this case is not merely a contempt of Judge Zimmerman as presiding judge, but is a challenge to the authority of the people who have provided a tribunal for the orderly determination of disputes and sought to compel all persons alike to submit to the authority of the tribunal so constituted. If it is within the power of a party to an

action, under the advice of counsel or the claim that he acts in good faith, to flout the judgments of a court and act in contravention thereto, then our system of government is wholly ineffectual to protect the rights of parties to actions who have submitted themselves to the jurisdiction of its courts; hence the duty of a citizen who is a litigant to obey the order of the court.

As was said by the supreme court of the United States:

"If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & R. Co.* 221 U. S. 418, 450, 31 Sup. Ct. 492.

In recognition of the fact that courts may err, being presided over by a judge who is human, the constitution has carefully provided for the review of the determination made through presiding judges, acting in the name of the people as a court. It is the duty of all good citizens to await the orderly determination of the issues although their desires may be balked temporarily and even their rights denied pending a review of what they claim to be an erroneous order.

The court having jurisdiction to issue the order and it being the duty of the defendant Beck to obey the order, did the acts admittedly performed by Beck violate the terms of the order? This contention presents a question of fact. The answer admits that whatever was done was done intentionally, and if the acts so done constitute a violation of the order the violation was intentional because one is presumed to know and intend the probable and natural consequences of his own act. Upon the record there can be no controversy that the acts done by the defendant violated the terms of the order.

The sole question presented, therefore, as already stated, is one of law as to whether or not the order which required the defendant to refrain and desist from performing his official duty was an order which the court had no power to make. What his official duty was under the circumstances depends upon a construction of the statute, the applicable clause being printed in the margin.[1]

This likewise presented a question of law which the court had jurisdiction and power to determine. Executive and administrative officers under our system of government cannot evade judicial authority by the interpretations which they place upon statutes conferring powers. Such a system prevails in some countries, notably France, but it has never been accepted in this country. Whether or not a public officer is acting within a statutory authority has from earliest times been held to be a judicial question. If he acts beyond his authority he acts as an individual, not as an officer, because as an officer he is without authority; consequently it is held that he is subject to judicial restraint. Even though the defendant claimed to act within his authority, having been enjoined by a court of competent jurisdiction from doing the acts complained of, it was his duty to await a final determination as to whether or not he was within or without his authority before proceeding in violation of the court's order and in contempt of the court itself. The cases where even a public official may act in contravention of an order of the court having jurisdiction of the sub-

---

[1] Section 99.07. The department may: (1) Obtain and furnish information relating to prices, profits and costs involved in the production or distribution of products. . . .

(2) Obtain and furnish information regarding the sources of supply of products necessary for the people of the state and the location of markets for Wisconsin products.

. . .

(5) Obtain and furnish lists of persons engaged in the production or distribution of products.

ject matter are extremely rare and are cases in most instances involving the exercise of political power. High, Injunctions (3d ed.) § 1425. We are not concerned here with the economic issues, the ultimate objective and purpose of the defendant or the plaintiff or any one else. Our concern is that the law of the land be administered as written. We cannot look out of the window and decide questions of law on the basis of what may be going on outside. It is the duty of the courts, trial and appellate, to sustain the laws and the constitution of the state, and, when disputes arise as to what is the law, those disputes should be settled in an orderly way by the authorities created and empowered to settle such controversies.

We do not consider and shall not determine whether or not the injunctional order issued under date of October 3d, enjoining and restraining the defendant from issuing or circulating or causing to be issued or circulated communications, lists, etc., as set out in the statement of facts, is erroneous or not; this for two reasons: while the appeal in this case is from a judgment, and under sec. 274.34 the power to review an intermediate order is preserved whether or not any exception has been preserved or any bill of exceptions settled, the question of whether the order of October 3d is erroneous is immaterial under all of the authorities.

An appeal from a judgment in contempt proceedings brought for violation of an order of the court brings before the appellate court only the question of fact whether the respondent violated the injunctional order, the order violated being one which the trial court had power to make. *Vilter Mfg. Co. v. Humphrey,* 132 Wis. 587, 112 N. W. 1095; *In re Rosenberg,* 90 Wis. 581, 63 N. W. 1065, 64 N. W. 299; 1 Bailey, Habeas Corpus, p. 279 *et seq.* and cases cited.

It further appears that by the enactment of ch. 3 (special session), Laws of 1931, the whole question has become moot, the members of the Markets Commission being by that act authorized to do the things here complained of.

It is claimed and strenuously argued here that the injunction constitutes an impairment of the defendant's right of free speech. This argument proceeds upon the theory that the right of free speech, for some reason not defined, rests upon a different basis than other rights guaranteed to the citizen by the constitution. While the right of free speech may in popular estimation be accorded a higher rank than other rights guaranteed to the citizen by the constitution, in a legal and constitutional sense the right of free speech is of no greater dignity than the right to life, liberty, property, trial by jury, freedom of conscience, and other rights guaranteed to the citizen by the constitution. Whether or not a particular act constitutes an exercise of the right guaranteed by the constitution is, and under our system must always remain, a judicial question. It must be conceded that there may be limitations upon the right to speak. *State ex rel. Olson v. Guilford* (174 Minn. 457, 219 N. W. 770), 58 A. L. R. p. 607 at p. 612 *et seq.*, and cases cited; *Near v. Minnesota ex rel. Olson,* 283 U. S. 697, 51 Sup. Ct. 625; *Gitlow v. New York,* 268 U. S. 652, 45 Sup. Ct. 625.

In *Northern Wis. Co-op. Tobacco Pool v. Bekkedal,* 182 Wis. 571, 197 N. W. 936, the defendants were enjoined from "interfering in any manner with the contracts of plaintiff." This included solicitation by the defendant of the members of the plaintiff pool to breach their contracts with the pool. This was a clear restraint upon the right to speak, but it did not occur to counsel on either side, to the trial court, or to this court that such restraint was a wrongful invasion of the right of free speech. One may not,

under the cover of free speech, wrongfully do injury to the business of another.

Whether statutes or orders restraining speech constitute an impairment of the citizen's constitutional right is a judicial question and in a proper case subject to determination by the court having jurisdiction of the controversy. One is no more entitled to judge for himself that the right of free speech guaranteed to him by the constitution has been wrongfully impaired than he has to determine for himself that he is wrongfully deprived of his liberty. It sometimes happens that a person is deprived of his liberty upon an unfounded charge that he has committed a criminal offense. Although he may be innocent he is obliged to submit to the court having jurisdiction the determination of the question of whether or not he is in fact guilty or innocent. No right can be more sacred than the right to one's personal liberty, nor is there any right more highly exalted in the law than that. Whether the acts complained of constituted a proper exercise of the defendant's constitutional right was a question which was submitted to the trial court and by that court, acting within its jurisdiction, determined adversely to the defendant. So long as that decision stood unreversed the defendant was deprived of no right guaranteed to him by the constitution. The same constitution which guarantees to him the right of free speech confers on the court before whom he was brought the power to determine the dispute. Had the defendant wished a determination of whether or not the order was erroneous, he should have appealed from that order instead of proceeding to violate its terms. His right of free speech would have been no more impaired or suspended than the right of the innocent defendant who has been erroneously convicted of a crime. Even though he is deprived of his liberty he must await the orderly processes of the law. Any

other theory would throw society into confusion, make each man a judge in his own case, and be wholly subversive of the power of the people to establish tribunals for the settlement of disputes.

*By the Court.*—The order and judgment appealed from is affirmed.

A motion for a rehearing was denied, with $25 costs, on October 11, 1932.