BERLOWITZ, d/b/a HARTFORD LIQUOR, Respondent, vs.
ROACH and others, Appellants.

*November 21—December 23, 1947.*

For the appellants there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

For the respondent there was a brief by *Fred R. Wright* of Milwaukee, attorney, and *Marcus A. Jacobson* of Waukesha and *Wallace C. Bartz* of Milwaukee of counsel, and oral argument by *Mr. Jacobson.*

A brief was filed by *Paul E. Jorgensen* of Racine, attorney for the Tavern League of Wisconsin, Inc., as *amicus curiæ.*

BARLOW, J.   Respondent Berlowitz was the holder of a retail "Class A" liquor license issued by the city of Hartford, and was engaged in the business of selling and trafficking in intoxicating liquor by operating a retail package-goods liquor·store. Between thirteen and fourteen thousand licensed taverns, package-goods stores, wholesalers, and pharmacies were engaged in selling, dealing, and trafficking in intoxicating liquor in the state of Wisconsin at the time this action was commenced.   Each had on hand on July 25, 1947, liquor purchased prior to that date and upon which Wisconsin beverage-tax stamps were affixed in the amounts as prescribed by sec. 139.26, Stats., prior to the amendment thereof by ch. 412, Laws of 1947.

Sec. 139.26 (1), Stats. 1945, provided for a tax of twenty-five cents per wine gallon on intoxicating liquors containing less than twenty-one per centum of alcohol by volume and one dollar per wine gallon on intoxicating liquors containing twenty-one per centum of alcohol by volume or more.   Ch. 412, Laws of 1947, which became the law on July 25, 1947, increased the rate of tax on intoxicating liquor containing less than twenty-one per centum of alcohol from twenty-five cents to fifty cents, and on intoxicating liquor containing twenty-one per centum or more of alcohol from one to two dollars per wine gallon.

The state treasurer, through the beverage and cigarette tax division of his office, took the position that the increased rates were immediately applicable on July 25, 1947, the date ch. 412, Laws of 1947, became a law, and applied to all·persons having intoxicating liquor in their possession for sale, and that they would be required to pay the additional tax.   The question for decision is whether the increased liquor tax applies to this intoxicating liquor.

Appellants contend, (1) that declaratory-judgment proceedings are not maintainable in this case, and (2) if they are,

the intoxicating liquor in question is taxable at the increased rate.

The Uniform Declaratory Judgments Act, sec. 269.56 (2), Stats;, provides:

"(2) . . . Any person . . . whose rights, status or other legal relations are affected by a statute, . . . may have determined any question of construction or validity arising under the . . . statute, . . . and obtain a declaration of rights, status or other legal relations thereunder."

This clearly grants to any party the right to proceed under the uniform declaratory-judgment statute to have a statute construed with reference to a claimed right so long as it cannot be said to be an action against the state. It is argued that while the state is not named as a party defendant it is the party in interest because the money realized from the collection of this tax is state property. We cannot agree with appellants' position that this is an action against the state. It is an action against the enforcing officer to prevent him from doing that which it is claimed he has no legal right to do, and if respondent is correct in his position that the statute gives him no legal right to collect this tax the enforcing officer is then acting as an individual in excess of his authority and with no protection under the law. It was held in *John F. Jelke Co. v. Beck* (1932), 208 Wis. 650, 661, 242 N. W. 576:

"There can be no doubt that the circuit court has jurisdiction in the sense that it has power to enjoin state officials from enforcing a statute which is invalid because in contravention of the constitution. An unconstitutional act of the legislature is not a law. It confers no rights, imposes no penalty, affords no protection, is not operative, and in legal contemplation has no existence. *State ex rel. Kleist v. Donald,* 164 Wis. 545, 160 N. W. 1067; *State ex rel. Ballard v. Goodland,* 159 Wis. 393, 150 N. W. 488."

While the constitutionality of this statute is not in issue the authority of the enforcing officer is involved and as to this it

was said in *Century Distilling Co. v. Defenbach* (1940), 61 Idaho, 192, 200, 99 Pac. (2d) 56:

"It is generally held by the courts, both state and federal, that where the action taken or threatened by any officer, is alleged to be in violation of the complainant's rights, either because of a misconstruction or misapplication by the officer of a statute, or on account of the alleged unconstitutionality of the statute, the action is not in fact one against the state, but is rather against the individual because of his lack of power and authority to do the things complained of. *State ex rel. Robinson v. Superior Court,* 182 Wash. 277, 46 Pac. (2d) 1046, 1049; *State Highway Comm. v. Younger,* 170 Okla. 614, 41 Pac. (2d) 686, 688; *Ex parte Young,* 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 727, 729, 14 Ann. Cas. 764, 13 L. R. A. N. S., 932; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, 839; *Reagan v. Farmers Loan & T. Co.* 154 U. S. 362."

This is consistent with what was said in the *Jelke Case, supra.* We see no difference between an officer attempting to act under a law which is unconstitutional and his attempting to act in excess of the authority granted to him under a law which is constitutional. The effect on the person against whom such action is taken is the same. In neither instance is it the act of the state because in neither instance has the state granted him any such authority.

Appellants further argue that the uniform declaratory-judgment statute cannot apply here for the reason that sec. 139.04, Stats., provides the exclusive procedure whereby any taxpayer may question his liability for the tax in issue. This section provides that no action shall be maintained in any court to restrain or delay the collection or payment of a tax levied under sec. 139.26, and then provides the taxpayer must pay the tax under protest and that he may then bring an action at law to recover the money so paid, provided it is brought within ninety days after the date of payment. If this is the exclusive remedy, it means that between thirteen and fourteen thousand

taxpayers must pay the tax and bring separate actions to determine whether the officer acted within the law in enforcing the payment of the tax. Seeking a declaratory judgment does not delay the collection or payment of the tax as the officer in charge is in position to enforce its payment at all times while the action is pending. While it is true that no restraining order would lie during the pendency of the action, it does not follow that the legislature intended this to be the exclusive remedy which a taxpayer has and that the declaratory-judgment statute is not to apply. Sec. 139.04 prohibits actions that will restrain or delay the collection or payment of the tax. It also authorizes suit to be brought against the state in the event the taxpayer elects to follow the procedure provided. An action seeking a declaratory judgment does not delay the collection of the tax, and there is no provision in sec. 139.04, which prohibits this procedure unless it must be inferred from the general language of the statute. We find nothing that warrants this inference. The state is not harmed. The taxpayer and the officer charged with the collection of the tax are afforded an expeditious method of having the statute construed under a procedure looked upon with favor by courts generally. This result is especially true where the tax is not to be collected until some future date, as was the case in *State ex rel. Prahlow v. Milwaukee,* 251 Wis. 521, 30 N. W. (2d) 260, decided December 11, 1947. It is considered the court properly assumed jurisdiction of the subject matter of the action.

This brings us to the question of whether the increased rates adopted by ch. 412, Laws of 1947, apply to intoxicating liquor acquired by dealers prior to but in their possession on July 25, 1947. Sec. 139.26 (1), Stats., provides:

"An occupational tax to be collected as a stamp tax is assessed, imposed, and levied upon the sale, exchange, offering or exposing for sale or exchange, having in possession with intent to sell or exchange, or removal for consumption, exchange or sale . . . of intoxicating liquors, other than wine

used for sacramental purposes and alcohol used for industrial, hospital, purposes."

The rates then follow.   The payment of the tax is evidenced by affixing beverage-tax stamps to the containers, the stamps to be obtained from the state treasurer who is charged with administering, collecting, and enforcing the tax with authority to make regulations for administrative purposes.

Appellants argue the tax is an occupational tax as set forth in the statute and is therefore a tax levied upon the privilege of selling intoxicating liquor, while respondent contends it was not the intention of the legislature to have this additional tax apply to intoxicating liquor on hand and, further, that it is an excise tax upon the liquor itself and payment of the tax by the manufacturer, wholesaler, or any person offering intoxicating liquor for sale at any time is final and complete payment of the tax.   It was properly conceded by respondent on the argument that the legislature may increase the rate of tax of any kind or at any time, provided it observes constitutional limitations. That this is not a tax upon the liquor itself seems to us to be perfectly evident.   It does not apply to intoxicating liquor in the possession of a person for his own use who is not offering it for sale or does not intend to sell it.   It applies only to intoxicating liquor in possession of persons who are engaged in the business of selling intoxicating liquor and is therefore a tax upon the privilege to sell, which is an occupational tax.

It is therefore not a question of the power or authority of the legislature to pass this law; it is a question of intention at the time it was passed.   It is argued by respondent that if it had been the intention of the legislature to have the tax apply to intoxicating liquor to which stamps had been affixed in accordance with the law in effect prior to July 25, 1947, it could easily have so provided in the law, which it did not do.   The usual rule is that a law becomes effective upon its passage and publication unless it is otherwise provided in the act.   It is

more reasonable to assume that the legislature had this in mind and saw no reason for providing that it was to become effective at once and apply to all intoxicating liquor offered for sale after the date of its passage.

Counsel for respondent strongly urge that the following provision in sec. 139.03 (2), Stats., sustains their position of the intention of the legislature:

"Not more than one tax shall be required to be paid on any one barrel, keg, case or other container."

The trial court was impressed with this provision. We conclude that the purpose of the provision was to eliminate any question of doubt on whether the tax had to be paid by the manufacturer at the time he made a sale to the wholesaler and then another tax paid at the time the wholesaler made a sale to the retailer, and still a third tax paid when the retailer sold to the consumer. What the legislature said by this provision is that for the purpose of this tax, on all transactions from the time it leaves the manufacturer until it is received by the consumer there is only one taxable sale, which may be paid by anyone handling the intoxicating liquor between the manufacturer and the retailer, but the tax must be paid before it may be sold to the consumer.

Reference is also made to sec. 139.26 (3) (d), Stats., which authorizes licensed vendors of intoxicating liquor without the state to purchase stamps from the state treasurer and affix them in the manner prescribed by him to the containers of intoxicating liquor to be sold in this state, which shall relieve any person handling the intoxicating liquor for sale affixing additional stamps. It is true that for administrative purposes the state treasurer made regulations requiring the manufacturer to affix the stamps before selling intoxicating liquor to dealers within the state. This relieved the state treasurer's office of considerable work on its part in efficiently administering the law, but did not prevent the state treasurer from selling

stamps to wholesalers and retailers to effectively carry out this law as amended.

Respondent contends the legislature was aware of the foregoing statutes and regulations which he now claims should have been amended if the legislature intended to have the law become effective on the date of publication. It is argued this leaves ambiguity and doubt to which the rule of law applies "that a tax cannot be imposed without clear and express language for that purpose, and where ambiguity and doubt exist it must be resolved in favor of the person upon whom it is sought to impose the tax." *Wadhams Oil Co. v. State* (1933), 210 Wis. 448, 459, 245 N. W. 646, 246 N. W. 687. We cannot agree with counsel that any ambiguity or doubt exists to which this rule should be applied, for reasons hereinbefore set forth. We therefore conclude the additional tax imposed by ch. 412, Laws of 1947, applied to all intoxicating liquor offered for sale from and after July 25, 1947, the date it became a law.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.

FOWLER, J., took no part.