STATE of Wisconsin, Plaintiff-Appellant,

v.

P. G. MIRON CONSTRUCTION COMPANY, INC., Defendant-Respondent.†

Court of Appeals

*No. 92-0841.   Oral argument November 19, 1992.—Decided March 25, 1993.*

(Also reported in 498 N.W.2d 889.)

† Petition to review granted.

476

For the plaintiff-appellant the cause was orally argued by *Alan Lee* and submitted on the briefs of *James E. Doyle*, attorney general, and *Alan Lee*, assistant attorney general.

For the defendant-respondent the cause was orally argued by *Linda M. Zech* and submitted on the brief of *William E. McCardell* and *Linda M. Zech* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   The State of Wisconsin appeals from a declaratory judgment requiring it to submit to arbitration of a monetary dispute arising under a state building contract. The contract contained an arbitration clause, and the issue is  whether the state has, by statute, expressly subjected itself to arbitration of such disputes.

We conclude that it has not and therefore reverse the judgment.

In 1987, the state, acting through the Department of Administration (DOA), contracted with Flad & Associates of Wisconsin, Inc., for architectural and engineering services in connection with a construction project on the University of Wisconsin campus. The DOA also hired the P.G. Miron Construction Company as general contractor for the project. Its contract with Miron contained a clause providing for binding arbitration of all disputes that might arise with respect to the terms of the agreement.

Miron subcontracted with Phoenix Steel to furnish and erect the steel shell of the building. During construction, a dispute arose over certain steel connections furnished by Phoenix which Flad claimed were improperly designed. Phoenix denied any responsibility for the defects but, in an effort to go forward with the project without further delay, Flad and Phoenix agreed to correct the problem and put off determining who would pay the added costs until all work was completed.

The project was completed in 1989, and Miron sought reimbursement from the state for additional costs it claimed to have incurred as a result of the dispute with Phoenix. The DOA denied the request, informing Miron that, in its opinion, sec. 16.855(11), Stats.,[1] applied and that Miron should pursue its claim against Flad, as the party at "fault."

Miron then invoked the arbitration clause of the contract and filed a demand for arbitration with the

---

[1] Section 16.855(11), Stats., one of many provisions applicable to state construction project contracts, provides that "[a] contractor shall be liable for any damages to another contractor working on the same project caused by reason of the former's default, act or nonperformance."

American Arbitration Association, naming the state as the sole respondent. After determining that an arbitrable issue existed, the association selected a panel of arbitrators to hear the dispute and a preliminary hearing was scheduled.

The state objected to the panel's jurisdiction, arguing that Miron's claims could not be made against the state and that the panel was precluded by state law from proceeding with the arbitration. Because the state's challenge to the panel's jurisdiction raised questions of state sovereignty and required constitutional and statutory interpretation, the arbitrators elected not to rule on the issue and the proceedings were suspended while the state sought a declaratory judgment on its rights in circuit court.

The trial court rejected the state's sovereign immunity arguments and ruled that it was required to submit to arbitration under the terms of the Miron contract. Judgment was entered accordingly and the state appeals. The issue is one of law, which we consider *de novo. See Raby v. Moe,* 153 Wis. 2d 101, 109, 450 N.W.2d 452, 455 (1990).

The Wisconsin Arbitration Act, ch. 788, Stats., governs the implementation and execution of arbitration procedures in Wisconsin. It generally provides for the enforcement of arbitration clauses in contracts, governs the selection of, and hearings before, arbitrators and provides for judicial review and enforcement of arbitration awards. Section 788.01 states in pertinent part:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between

two or more *persons* to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract . . ..
(Emphasis added.)

The DOA/Miron contract contains a clause providing a two-step procedure of resolving claims and disputes. The matter is first reviewed by a DOA administrator and then: ". . . [i]f any claim, dispute or other matter remains unresolved after such review by the Administrator, arbitration may be initiated by either party to the dispute. . .. The demand for arbitration shall be filed in writing with the Division Administrator."

Pointing first to sec. 788.01, Stats., Miron argues that the state must be considered a "person" within the meaning of the statute and thus bound by the provisions of the Arbitration Act. The state responds that general principles of sovereign immunity render the act's provisions inapplicable to its activities.

It is a basic concept in the law that the state, as the sovereign, may only be sued upon its consent. *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976). In the words of art. IV, sec. 27, of the Wisconsin Constitution: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." It is equally well established that the state's consent to suit may not be implied: it must be "clear and express." *See Fiala v. Voight*, 93 Wis. 2d 337, 342-43, 286 N.W.2d 824, 827 (1980).

The state has, of course, generally "consented" to suit in secs. 16.007 and 775.01, Stats., through the creation of a two-step procedure for processing and resolving claims. Under the former section, claims are presented

first to the state claims board which, after hearing, files its recommendation to grant or deny the claim to the legislature. Then, sec. 775.01 expressly authorizes the claimant to "commence an action against the state" upon the legislature's disallowance of the claim.

We disagree with Miron's assertion that the state has similarly subjected itself to arbitration (and judicial enforcement of arbitration awards) in sec. 788.01, Stats. A basic rule of statutory construction is that statutes of general application do not apply to the state unless the legislature has so stated in explicit terms. "It is universally held . . . that . . . statutes [of general application] do not apply to the state unless the state is explicitly included by appropriate language." *State ex rel. Dep't of Pub. Instruction v. DILHR*, 68 Wis. 2d 677, 681, 229 N.W.2d 591, 594 (1975) (quoting *State ex rel. Martin v. Reis*, 230 Wis. 683, 687, 284 N.W. 580, 582 (1939)). It is a "presumptive" rule, exempting the state from general statutes that can be read as applicable to both the government and private parties alike, *Town of Janesville v. Rock County*, 153 Wis. 2d 538, 542, 451 N.W.2d 436, 437 (Ct. App. 1989), and it derives from the presumption that the "legislature does not intend to deprive the [state] of *any* prerogatives, rights, or property unless it expresses its intention to do so in explicit terms . . .." *State v. City of Milwaukee*, 145 Wis. 131, 135, 129 N.W. 1101, 1102 (1911) (emphasis added).

Chapter 788, Stats., is an act of general application outlining the use of arbitration procedures as an alternative form of dispute resolution. It contains no express reference to the state; nor do we see any language in the act that must necessarily be construed as bringing the

state within its terms.[2] Under the principles discussed above, we cannot treat the very general reference to "persons" in sec. 788.01, Stats., to encompass the state, as Miron urges us to do — especially when to do so would deny the state a very important prerogative: determining how and in what manner claims made against it shall be resolved.[3] As we have noted above, the legisla-

---

[2] "[N]o proposition of law is better established than that administrative agencies have only such powers as are expressly granted to them or necessarily implied and any power sought to be exercised must be found within the four corners of the statute under which the agency proceeds." *American Brass Co. v. State Bd. of Health*, 245 Wis. 440, 448, 15 N.W.2d 27, 30 (1944). We are not aware of any act of the legislature empowering DOA to agree to bind the government to arbitration of disputes arising over payments due under state construction contracts.

Miron refers us to *City of Madison v. Frank Lloyd Wright Found.*, 20 Wis. 2d 361, 373, 122 N.W.2d 409, 416 (1963), for the proposition that DOA's power to enter into binding arbitration provisions in state building contracts must necessarily be implied from its authority to enter into such contracts in the first place. Quoting older cases, notably *Kane v. Fond du Lac*, 40 Wis. 495, 499 (1876), the *Frank Lloyd Wright* court recognized that municipalities "may, unless restricted by its charger, lawfully submit a disputed claim against it to arbitration . . .." 20 Wis. 2d at 374, 122 N.W.2d at 416. Miron does not suggest, however, how a case involving the authority of a city — an entity not partaking of sovereign immunity — might be persuasive on whether the state has waived its sovereign immunity or expressly consented or subjected itself to arbitration and suit by granting one of its agencies the power to make contracts.

[3] In *Richard L. Deal and Associates, Inc. v. Commonwealth*, 299 S.E.2d 346 (Va. 1983), the Virginia Supreme Court reached a similar conclusion on similar facts. Deal sued to enforce an arbitration award, after the Commonwealth refused to pay for services it had contracted for. Applying an arbitration statute similar to sec. 788.01, Stats., the court rejected Deal's claim,

ture has spoken with clarity on the point in secs. 16.007 and 775.01, Stats., by creating a procedure for resolution of claims arising from disputes such as this; and we agree with the state that permitting an agency to bind the government to arbitration and suit would subvert this procedure and thus nullify an important aspect of state sovereignty.

If the legislature had intended to include the state within the terms of the Arbitration Act, thus empowering the DOA to bind the government to arbitration of claims made against the state, it could have said so in plain and specific language — as it has done in the past. Prior to 1983, sec. 16.76(1), Stats., *required* that all state contracts for the purchase of materials, supplies and equipment, contain a clause "providing for arbitration of disputes between the state and the contractor regarding quality and quantity." Section 16.76 (1981-82). The statute was amended in 1983 to remove all reference to arbitration in state contracts. Section 101, 1983 Wis. Act 27. We note, too, that in the State Employment Relations Act, secs. 111.80-.94, Stats., the legislature has expressly provided for arbitration under ch. 788 for grievances arising out of collective bargaining contracts between the state and its employee unions. Section 111.86.

■

Because the legislature has not plainly expressed its will that the State of Wisconsin be subjected to the arbitration provisions of ch. 788, Stats., and because it has not authorized the DOA to bind the government to

concluding that the Commonwealth was not a "person" within the meaning of the statute and thus not subject to general arbitration statutes. *Richard L. Deal*, 299 S.E.2d at 347. As a result, the Commonwealth's agents lacked legal authority to execute an arbitration agreement that would bind the government. *Id.* at 348.

arbitration clauses in state building contracts, it follows that the state cannot be made a party to arbitration under the Miron contract.

*By the Court.*—Judgment reversed.