John GRALL, Steven Cridelich and Kimberly Cridelich, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,†

v.

Mark BUGHER, Director of the Wisconsin Department of Revenue, on behalf of themselves and all others similarly situated, Defendants-Respondents.

Court of Appeals

*No. 92–2855. Submitted on briefs September 13, 1993.—Decided December 16, 1993.*

(Also reported in 511 N.W.2d 336.)

†Petition to review filed.

For the plaintiffs-appellants the cause was submitted on the briefs of *Charles Barnhill* and *Sarah E. Siskind* of *Davis, Miner, Barnhill & Galland* of Madison.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gerald S. Wilcox*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J.   John Grall and several other purchasers of new automobiles from Wisconsin dealers sued the Wisconsin Department of Revenue, claiming

that the "manufacturers' rebates" they received in connection with their purchases should not have been subject to the five percent state sales tax. They argued that taxing the rebated amount violated their rights under the state and federal constitutions, and they sought recovery of an amount equal to five percent of the rebates, together with declaratory and injunctive relief under 42 U.S.C. § 1983.

The department moved to dismiss on grounds that the plaintiffs had failed to exhaust their administrative remedies and that any sec. 1983 claims were barred by principles of sovereign immunity.[1] The trial court granted the motion, and Grall and the others appeal from the order dismissing their complaint.

The dispositive issue is whether the department is immune from suit, and we conclude that it is.[2] We therefore affirm the judgment.

---

[1] The department also contended that, to the extent any of the state claims were asserted against the department director personally, they were barred for failure to comply with the notice-of-claim requirements of sec. 893.82, Stats. Because plaintiffs conceded that their action was against the department only, that issue is not before us on this appeal.

[2] Plaintiffs sought both monetary damages from the department in the form of a refund of the additional sales taxes paid and a declaration that the department's taxing scheme, as it applies to automobile manufacturers' rebates, was unconstitutional and void.

Sovereign immunity, of course, does not apply to actions for injunctive relief, *Harkness v. Palmyra-Eagle School Dist.*, 157 Wis. 2d 567, 579, 460 N.W.2d 769, 774 (Ct. App. 1990), and to the extent that plaintiffs seek such relief, traditional exhaustion-of-remedies principles would apply. However, it is plain from plaintiffs' arguments on the exhaustion issue that the heart of their action is obtaining monetary relief. They claim that any administrative remedy would be wholly inadequate

The facts are not in dispute. In recent years, automobile manufacturers have developed a variety of sales incentive programs reducing the price paid by consumers for certain automobile models: "manufacturers' reductions," whereby the manufacturers sell models to dealers at lower prices so the dealers can pass the savings along to customers; "holdbacks," where the manufacturers return a portion of the price paid by the dealers when the automobile is sold; "dealer incentives," where the manufacturers simply remit a certain amount of money to the dealer for each car sold; and "manufacturers' rebates," where the manufacturer reduces the sales price to the purchaser and remits the rebate to the dealer.[3] Each program results in the same purchase price for the automobile, as the consumer pays the reduced price no matter how the reduction is implemented between the manufacturer and dealer.

---

because they cannot recover the money in administrative proceedings. They state, for example: "There is no dispute that the current administrative scheme is now *incomplete* in the most profound sense [because] it cannot provide *the . . . refunds appellants seek*" (first emphasis in original; second added). Consistent with that position, they argue that they are entitled to their day in court on their monetary claim.

We thus see no need to address the exhaustion issue. Our decision on the sovereign immunity defense is dispositive of the appeal because it precludes the plaintiffs from recovering money damages — which they concede is their overriding claim — from the department as an arm of the state.

[3] Unfortunately, the nature of the various schemes — particularly the one at issue here, the manufacturers' rebate — is not described further by the parties. The record on appeal contains only the plaintiffs' complaint, from which the above descriptions are taken, and the trial court's memorandum decision.

The Department of Revenue taxes the various programs differently, however. For example, if a customer purchases a car with a retail price of $15,000 for only $14,000, and the purchase is made pursuant to a "manufacturer's reduction," a "holdback" or a "dealer incentive," the sales tax is applied to the reduced price. Where, however, the purchase is made under a manufacturer's rebate program, the tax is applied to the full $15,000 price, even though the customer's actual cash outlay is the same as if the car were purchased under one of the other price reduction schemes.

Grall and the other plaintiffs purchased their automobiles under a manufacturer's rebate program, and the sales tax was applied to the full, undiscounted price of the vehicles. Because the facts are undisputed and the case turns on the application of the law to those facts, our review is *de novo. Riley v. Doe,* 152 Wis. 2d 766, 769, 449 N.W.2d 83, 84 (Ct. App. 1989).

Sovereign immunity in Wisconsin derives from article IV, section 27 of the constitution, which provides that: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Thus,

> it is an established principle of law that no action will lie against a sovereign state in the absence of express legislative permission. It is further established that when a sovereign permits itself to be sued upon certain conditions, compliance [with those conditions] is a jurisdictional matter, and a suit against the sovereign may not be maintained unless such conditions are complied with. *State ex rel. Martin v. Reis,* 230 Wis. 683, 685, 284 N.W. 580, 581 (1939).

167

The immunity is procedural in nature and, if properly raised, "deprives the court of personal jurisdiction over the state." *Fiala v. Voight*, 93 Wis. 2d 337, 341, 286 N.W.2d 824, 827 (1980). The test is whether the relief sought would require payment from state funds; if so, the action is barred. *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 292, 240 N.W.2d 610, 617 (1976).

There is no question here that plaintiffs are seeking to recover funds from the state. They argue that immunity should not apply, however, asserting that a recent United States Supreme Court case, *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), compels reversal of the trial court's determination that the action is barred. They assert that *McKesson* states a "rule of federal law" that a state must refund unconstitutionally collected taxes, and that that rule "overrides the State's sovereign immunity defense" under the mandate of the supremacy clause of the United States Constitution.

In *McKesson*, a tax preference for certain products commonly grown in Florida and used in alcoholic beverages was challenged by a distributor of liquor manufactured from crops grown in other states. The Florida Supreme Court invalidated the tax scheme, holding that it unconstitutionally discriminated against interstate commerce because of its preference for distributors of local products. Although the Florida court enjoined the state from giving effect to such preferences in the future, it declined to order refunds to the plaintiff. The United States Supreme Court reversed, holding that prospective relief alone, without providing the taxpayer "a meaningful opportunity to secure postpayment relief for taxes . . . paid pursuant to a tax scheme ultimately found unconstitutional," violated

the taxpayer's due process rights. *McKesson*, 496 U.S. at 22.

As Grall and the other plaintiffs note, the "controlling federal principle" of *McKesson* is that, because the "exaction of a tax constitutes a deprivation of property," due process requires that "the State . . . provide taxpayers with, not only a fair opportunity to challenge . . . their tax obligation, but also a 'clear and certain remedy,' for any erroneous . . . tax collection." *Id.* at 36, 39 (citation omitted). The trial court ruled that *McKesson* was inapplicable because Grall and the other purchasers — unlike the distributor in *McKesson* — were not the parties who paid the sales taxes to the state; thus, they are not "taxpayers." We agree.

Section 77.51(21), Stats., defines a "taxpayer" as "the person required to pay, collect, account for or who is otherwise directly interested in the taxes imposed by this subchapter." Under sec. 77.52(1), Stats., the sales tax "is imposed upon all *retailers*" for "the privilege of selling . . . personal property . . . at retail in this state." It is a tax on "the *gross receipts* from the sale . . . ." *Id.* (emphasis added).

While sec. 77.52(3), Stats., does, as plaintiffs point out, authorize the retailer to "collect[ ]" the sales tax from the consumer, we do not believe that fact brings them within the statutory definition of "taxpayer." In addition to the language noted above imposing the tax on "the retailer," other sections of the sales tax statute speak in similar terms. Section 77.52(1m), for example, states that the sales tax also applies "to the *receipts* of operators of vending machines located on [military] installations" (emphasis added); sec. 77.52(6) provides that "[a] *retailer* is relieved from *liability for sales tax*" for certain worthless accounts (emphasis added); and sec. 77.52(18) states that "[i]f any *retailer liable for any*

169

*amount of tax under this subchapter*" quits the business, his or her successors are required to withhold sufficient funds from the purchase price of the business to pay such sales taxes as may be due (emphasis added).[4]

We also note that in *Dairyland Harvestore, Inc. v. DOR*, 151 Wis. 2d 799, 805-06, 447 N.W.2d 56, 59 (Ct. App. 1989), we held that two companies that had paid sales taxes to a retailer on the purchase of equipment lacked standing to seek a refund or offset from the Department of Revenue because the retailer, not the plaintiff companies, was responsible for paying the taxes to the department under sec. 77.52(1), Stats.[5]

---

[4] Plaintiffs argue that they are persons "otherwise directly interested" in the taxes imposed by sec. 77.52, Stats., and as such come within the definition of "taxpayer" quoted above. Again, we disagree. Given the language throughout the section imposing the tax on retailers "for the privilege of selling . . . personal property" in Wisconsin and making them — the sellers — liable for the payment thereof, we agree with the department that a person "otherwise directly interested" in the tax must be read as limited to one standing in the shoes of the actual taxpayer — the retailer — such as a trustee, receiver, executor, administrator or assignee. Such an interpretation is consistent with the provisions in sec. 77.59(6), Stats., providing for applications for redetermination of the department's deficiency or refund determinations by "the taxpayer, or other person directly interested . . . ."

[5] Plaintiffs cite as authority for their position a provision in sec. 77.53(2), Stats., which states that persons "using or otherwise consuming . . . tangible personal property . . . purchased from a retailer [are] liable for the tax imposed by this section." That section, however, has to do with the use tax, not the sales tax that is the subject of this appeal.

We therefore agree with the trial court that *McKesson* does not compel reversal of the trial court's holding that the plaintiffs' refund claim is barred by principles of sovereign immunity. The case is inapplicable because these plaintiffs, unlike the distributor in *McKesson*, are not the "taxpayers" within the meaning of the state sales tax law.

Finally, the plaintiffs argue that the Wisconsin Constitution itself "waives" immunity by consenting to suits such as this. They point to article VIII, section 1, which provides that "[t]he rule of taxation shall be uniform,"[6] and argue that this language must be considered consent to be sued for refund of taxes that are not uniformly imposed.

In so arguing, plaintiffs place principal reliance on *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983), where the Wisconsin Supreme Court held that the constitutional provision providing for "just compensation" for the taking of property was self-executing and provided an avenue for the plaintiff in that case — who claimed that her real estate had been taken by the state without compensation — to sue the state. The *Zinn* court recognized that in light of the just compensation clause in article I, section 13 of the constitution, there was no need for the legislature to separately consent by statute to a suit for an improper taking of property. *Zinn*, 112 Wis. 2d at 435-36, 334 N.W.2d at 75-76.

---

[6] Grall and the other purchasers assert that, because some purchasers of automobiles at discount are taxed only on the discounted price, while they paid tax on the undiscounted price, they are not being uniformly taxed.

It is well established that the sovereign's immunity from suit can be waived only by express language: "the state's consent to suit may not be implied: it must be 'clear and express.' " *State v. P. G. Miron Constr. Co.*, 175 Wis. 2d 476, 480, 498 N.W.2d 889, 891 (Ct. App. 1993). And we do not consider the "uniformity clause" to have waived the department's immunity from this lawsuit. There is nothing in that clause even remotely authorizing suits against the state under the circumstances presented here. Nor does *Zinn* aid the plaintiffs' cause, for the express terms of the provision involved in that case provided for compensation: "The property of no person shall be taken for public use without just compensation therefor." WISCONSIN CONST., art. I, sec. 13. We conclude, therefore, that the trial court properly dismissed the plaintiffs' 42 U.S.C. § 1983 claims on sovereign immunity grounds.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). By interposing the defense of sovereign immunity, the secretary of the department concedes that for purposes of analysis, the sales tax of which plaintiffs complain is unconstitutional. It is fundamental that sovereign immunity is not a defense to a claim based on an alleged violation of the plaintiff's constitutional rights by a state agency or officer. 1 SHEPARDS, CIVIL ACTIONS AGAINST STATE AND LOCAL GOVERNMENT § 1.20, at 70 (2d ed. 1992). "Constitutional claims that are not barred by sovereign immunity may include those based on both the federal and state constitutions, such as violations of the constitutional rights to . . . due process and equal protection of the laws." *Id.* at 70-71. *See also Burdette v. State*,

421 N.W.2d 185 (Mich. Ct. App. 1988) (governmental immunity not available in state court action alleging state violated plaintiff's due process rights); *Tucker v. Hinds County*, 558 So. 2d 869 (Miss. 1990) (sovereign immunity not available to county and its electric utility in action alleging violation of due process rights in disconnecting electrical power); and *Grinnell v. State*, 435 A.2d 523 (N.H. 1981) (state not immune from suit asserting that constitutional provision requiring compulsory retirement violated due process and equal protection clauses of fourteenth amendment).

The difficulty with the secretary's position is that he assumes that because plaintiffs' action is against him in his official capacity, the action is against the state. That is not the law. In *Berlowitz v. Roach*, 252 Wis. 61, 65, 30 N.W.2d 256, 258 (1947) (quoting *Century Distilling Co. v. Defenbach*, 99 P.2d 56, 59 (1940)), the court said:

> "It is generally held by the courts, both state and federal, that where the action taken or threatened by any officer, is alleged to be in violation of the complainant's rights, either because of a misconstruction or misapplication by the officer of a statute, or on account of the alleged unconstitutionality of the statute, the action is not in fact one against the state, but is rather against the individual because of his lack of power and authority to do the things complained of." [Citations omitted.]

The *Berlowitz* court also cited the following with approval:

> "There can be no doubt that the circuit court has jurisdiction in the sense that it has power to enjoin state officials from enforcing a statute which is invalid because in contravention of the constitution. An unconstitutional act of the legislature is not

a law. It confers no rights, imposes no penalty, affords no protection, is not operative, and in legal contemplation has no existence."

*Id.* at 64, 30 N.W.2d at 257 (quoting *John F. Jelke Co. v. Beck*, 208 Wis. 650, 242 N.W. 576 (1932) (citations omitted)).

The secretary argues, however, that plaintiffs are not entitled to any relief, including injunctive relief, until they have exhausted their administrative remedies. In *Hogan v. Musolf*, 163 Wis. 2d 1, 27, 471 N.W.2d 216, 225-26 (1991), *cert. denied*, 112 S. Ct. 867 (1992), the court held: "[W]e conclude that plaintiffs who challenge the administration of the state's taxing statutes must exhaust their administrative remedies before commencing their sec. 1983 claims in the courts of this state." The court emphasized, however, that the state remedies must be "plain, adequate, and complete," *id.* at 20, 471 N.W.2d at 223; that "it would not be futile to exhaust these remedies." *Id.* at 22, 471 N.W.2d at 224.

It is obvious that sec. 77.59(4), Stats., does not provide the taxpayer with a "plain, adequate and complete" administrative remedy. That procedure is not even available to these plaintiffs and others similarly situated. The due process clause does not permit the state to make the taxpayer who has paid an unconstitutional tax dependent on some other person, in this case a motor vehicle dealer, to raise the constitutional issue and file a claim for refund.

The secretary argues that sec. 227.41(1), Stats.,[1] provides plaintiffs with a plain, adequate, and com-

---

[1] Section 227.41(1), Stats., provides:

Any agency may, on petition by any interested person, issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforced by it. Full opportunity for hearing shall be afforded to interested parties. A

plete remedy, which it would not be futile for them to exhaust. Section 227.41(1) empowers a state agency to issue a declaratory ruling upon petition. Section 227.41(1) does not provide these plaintiffs with a remedy that is "plain, adequate, and complete" for several reasons. First, the department lacks the capacity to determine whether a statute is unconstitutional or whether the lack of an administrative procedure denies a taxpayer procedural due process.[2] Second, the department has no power to grant plaintiffs prospective relief and no power, at least under that statute, to fashion a "clear and certain remedy" for recovery of the unconstitutional tax upon these taxpayers. Third, the secretary has already signalled that he will raise the defense of sovereign immunity even if the tax is unconstitutional. Resort to sec. 227.41(1) would therefore be futile. Finally, sec. 227.41 is discretionary; the department need not grant a petition for a declaratory ruling.

The United States Supreme Court has recently thoroughly explored the doctrine of exhaustion of administrative remedies. *McCarthy v. Madigan*, 503 U.S. —, 112 S. Ct. 1081 (1992). The *McCarthy* Court identified three broad sets of circumstances in which the interests of the individual weigh heavily against

declaratory ruling shall bind the agency and all parties to the proceedings on the statement of facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the circuit court in the manner provided for the review of administrative decisions.

[2] The *Hogan* court held that the department and the Tax Appeals Commission could declare a statute unconstitutional, but only where the United States Supreme Court provided binding precedent in a similar factual setting. *Hogan v. Musolf*, 163 Wis. 2d 1, 21, 471 N.W.2d 216, 224 (1991), *cert. denied*, 112 S. Ct. 867 (1992).

requiring administrative exhaustion. *McCarthy*, 112 S. Ct. at 1087-88. First, exhaustion may cause undue prejudice against subsequent assertion of a court action because of delay by an agency. I do not believe that that circumstance is of much weight here. Second, an administrative remedy may be inadequate " 'because of some doubt as to whether the agency was empowered to grant effective relief.' " *Id.* at 1088 (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)). An agency may "lack[ ] institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute." *Id.* Section 227.41(1), Stats., does not, and could not, empower the department to declare a statute unconstitutional, except in the limited circumstances referred to in *Hogan*. Third, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.*

The last inadequacy is particularly apposite here, where the secretary has already asserted the defense of sovereign immunity. There is no reason to believe that the secretary or the department would waive that defense and exercise its discretion to grant plaintiffs declaratory relief under sec. 227.41(1), Stats.

Plaintiffs rely on *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990). Plaintiffs claim that *McKesson* requires the state to comply with the due process clause of the fourteenth amendment to afford them meaningful postpayment relief. The secretary makes two responses. First, he claims that unlike the wholesaler in *McKesson*, plaintiffs were not the parties who actually paid the taxes to the department under duress; plaintiffs have not filed for refunds. Second, sec. 77.59, Stats., provides the pro-

cedural safeguards against unlawful exactions required by *McKesson*.

Plaintiffs concede that they may not file a refund claim for the unlawfully collected taxes under sec. 77.59(4), Stats. They agree that that statute prohibits any person from applying for a refund other than the retailer who transmitted the tax to the state after charging the customer for it. Plaintiffs argue, however, that the due process clause of the fourteenth amendment, as construed and applied in *McKesson*, requires the state to provide them a remedy to recover the unlawful taxes which they have paid.

It is undisputed that these taxpayers paid the sales tax on the automobiles they purchased and the dealer merely acted as the state's agent. In reviewing sec. 77.52(1)-(4), Stats., we said that under this statutory scheme "the retailer or seller is in practical effect an agent of the state for the collection of a tax imposed upon the consumer of tangible goods and the user of certain services." *Midcontinent Broadcasting Co. v. DOR*, 91 Wis. 2d 579, 587, 284 N.W.2d 112, 116 (Ct. App. 1979), *rev'd on other grounds*, 98 Wis. 2d 379, 297 N.W.2d 191 (1980). Section 77.52(3) provides: "The taxes imposed by this section may be collected from the consumer or user." I said in my separate opinion in *Dairyland Harvestore, Inc. v. DOR*, 151 Wis. 2d 799, 811, 447 N.W.2d 56, 61 (Ct. App. 1989) (Sundby, J., concurring in part, dissenting in part): "A literal construction of sec. 77.59(4), Stats. (1977), leads to the result that a purchaser who has overpaid sales tax is dependent upon the seller to recover the overpayment." I suggested that sec. 77.59(4) should not be read literally, but should allow the consumer who actually overpaid the sales tax to file a claim for refund. After our decision in *Dairyland Harvestore*, the legislature

177

amended sec. 77.59(4) so that it is now clear that a refund claim may be filed only by the person who actually paid the taxes to the department. [3]

In *Dairyland Harvestore* we engaged in statutory construction; that exercise now leads to the conclusion that these plaintiffs may not file a claim for refund under sec. 77.59(4), Stats., at least if the sales tax is collected from them and paid to the department by the retailer. Plaintiffs do not ask that we construe sec. 77.59(4). They now claim that the statute is unconstitutional because it does not provide them with "meaningful postpayment relief" where the tax scheme is unconstitutional.

*McKesson* did not deal with the situation where an intermediary collected the taxes and paid them to the state. In *McKesson*, Florida required the taxpayers to pay their taxes first and obtain review of the tax's validity later in a refund action. In that circumstance, the Court held that the due process clause of the fourteenth amendment requires the state "to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional." *McKesson*, 496 U.S. at 22.

As I read plaintiffs' arguments, they claim that the state must provide them with "a meaningful opportunity to secure . . . postpayment relief" for taxes they have paid pursuant to an unconstitutional tax scheme.

---

[3] It is not clear whether the consumer or user could pay the taxes directly to the department so as to qualify as the person who has paid the taxes. In view of sec. 77.52(3), Stats., that the department may collect the sales tax from the consumer or user, I see no reason why these plaintiffs or others similarly situated could not pay the taxes directly to the department and then file a claim for refund under sec. 77.59(4), Stats.

The issue boils down to whether a postpayment relief scheme which makes the taxpayers dependent on the filing of a claim by the retailer satisfies the requirements of due process announced in *McKesson*. I conclude that such a scheme is not "a meaningful opportunity to secure . . . postpayment relief." There is no procedure provided under the statutes by which the actual taxpayer can compel the retailer to file a claim for refund. In fact, I doubt whether a consumer or user who has paid the sales tax to the retailer has a cause of action against the retailer if the retailer does not forward the tax to the department. In any event, I do not believe that a statutory scheme under which the taxpayers have no meaningful opportunity to secure postpayment relief from an unconstitutional tax satisfies the due process clause.

The *McKesson* Court relied on a number of its previous decisions requiring that a state which has levied an unconstitutional tax must provide the taxpayer who has paid the tax a "clear and certain remedy." *Id.* at 33. In *Ward v. Board of County Comm'rs*, 253 U.S. 17 (1920), the Court reversed the Oklahoma Supreme Court's refusal to award a refund for an unlawful tax levied on Native American tribes in contravention of a treaty. The Court explained the state's duty to remit the tax to the tribes:

> To say that the county could collect these unlawful taxes by coercive means and not incur any obligation to pay them back is nothing short of saying that it could take or appropriate the property of these Indian allottees arbitrarily and without due process of law. Of course this would be in contravention of the Fourteenth Amendment, which binds the county as an agency of the State.

179

*Ward*, 253 U.S. at 24.

In *Montana Nat'l Bank v. Yellowstone County*, 276 U.S. 499 (1928), the Court applied the same due process analysis to a tax on shares of banks incorporated under federal law but not on shares of state-incorporated banks. The Montana Supreme Court granted prospective relief. The United States Supreme Court noted, however, that prospective relief alone "d[id] not cure the mischief which had been done under the earlier construction." *Montana Nat'l Bank*, 276 U.S. at 504. The *McKesson* Court noted:

> We held that the Montana National Bank of Billings "c[ould not] be deprived of its legal right to recover the amount of the tax unlawfully exacted of it by the later [Montana Supreme Court] decision which, while repudiating the construction under which the unlawful exaction was made, le[ft] the monies thus exacted in the public treasury . . . ."

*McKesson*, 496 U.S. at 35 (quoting *Montana Nat'l Bank*, 276 U.S. at 504-05).

The Court again applied this analysis to a discriminatory tax in *Iowa- Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239 (1931). The *McKesson* Court concluded:

> These cases demonstrate the traditional legal analysis appropriate for determining Florida's constitutional duty to provide relief to petitioner McKesson for its payment of an unlawful tax. Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause.

*McKesson*, 496 U.S. at 36. The court further said:

> To satisfy the requirements of the Due Process Clause . . . in this refund action the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a "clear and certain remedy," . . . for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.

*Id.* at 39 (footnote and citation omitted).

A "clear and certain remedy" does not, however, necessarily require that the state refund taxes unlawfully collected. The *McKesson* Court held that Florida "retain[ed] flexibility" as to how it would provide the taxpayers with meaningful relief. *Id.* at 39. *See also Harper v. Virginia Dept. of Taxation*, 509 U.S. — , 113 S. Ct. 2510, 2519-20 (1993). The state may provide meaningful relief by equalizing the tax burden between similarly situated taxpayers. That form of relief may be impracticable here. However, the state cannot avoid the due process clause by simply denying a taxpayer the process necessary to recover an unlawful tax. I do not hesitate in concluding that sec. 77.59(4), Stats., unconstitutionally denies the plaintiffs, and those similarly situated, due process.

Finally, I address the secretary's argument that plaintiffs' state-law claims are barred because they did not file the notice of claim required by sec. 893.82(3), Stats. I agree that this failure precludes plaintiffs from recovering monetary damages in this action. However, it has been repeatedly held by the Wisconsin Supreme Court that failure to file a notice of claim pursuant to sec. 893.82(3) does not bar a plaintiff from maintaining an action for declaratory or prospective relief. *Casteel v. McCaughtry*, 176 Wis. 2d 571, 584-85, 500 N.W.2d 277, 283-84 (1993), *cert. denied*, 114 S. Ct. 327 (1993).

For the reasons I have stated, I respectfully dissent.[4]

---

[4] Plaintiffs allege a claim under 42 U.S. § 1983. The secretary does not argue that sec. 1983 may not be used to attack the imposition of an unconstitutional tax. The secretary may have considered this issue settled by *Hogan*, 163 Wis. 2d 1, 471 N.W.2d 216. However, in *Hogan* the court stated that the plaintiff retirees sought declaratory and injunctive relief against the defendants *in their individual capacities. Id.* at 8, 471 N.W.2d at 218 (emphasis added). My tentative conclusion is that these plaintiffs may maintain an action under sec. 1983 on one of two theories. First, when the secretary acted pursuant to an unconstitutional statute, he did not act as an agent of the state but as an individual. Second, if the secretary is considered to be the state under *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the state is the "motivating force" behind the alleged deprivation of plaintiffs' constitutional rights. *Id.* at 68. For a discussion of this issue, see 2 S. STEINGLASS, SECTION 1983 LITIGATION IN STATE COURTS § 18.3 (1993). *See also Fair Assessment In Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 and n.8 (1981); *Marx v. Truck Renting & Leasing Ass'n*, 520 So. 2d 1333 (Miss. 1987).